**FOURTH DIVISION
BARNES, P. J.,
RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**June 17, 2015**

# In the Court of Appeals of Georgia

A15A0420. WILLIAMS v. THE STATE.

MCMILLIAN, Judge.

Larry Eugene Williams was charged with nine drug-related counts[1] arising out of three drug transactions on two different dates. Williams was convicted on all counts on March 4, 2009, but the trial court later granted his motion for new trial. On retrial, he was again convicted on all nine counts. Williams now appeals the denial of his subsequent motion for new trial, asserting that the trial court erred in granting the State's motion in limine and in denying his motion for new trial despite what he

---

[1] Williams was charged with three counts each of sale of cocaine under OCGA § 16-13-30 (b), possession of cocaine under OCGA § 16-13-30 (a), and possession of illegal substances near a housing project with intent to distribute under OCGA § 16-13-32.5 (b).

asserts is a fatal variance between the allegations in the indictments[2] and the evidence introduced at trial.

Viewed in the light most favorable to the verdict, the evidence showed that in June and July 2008, Brice Parrish was assisting Detective Josh Brock of the Summerville Police Department in making undercover purchases of controlled substances. On June 24, 2008, Parrish made two separate undercover purchases of a substance that contained cocaine from Williams. The next day, Williams again sold cocaine to Parrish during another controlled buy. Williams was later arrested and charged with the nine drug-related counts. Additional facts will be recited as necessary to consider Williams' arguments.

1. Williams asserts that the trial court erred in granting the State's motion in limine to prevent his cross-examining Brock about a website and publication with which he was affiliated.

At the hearing on the motion in limine, the parties presented no evidence and thus the trial court made no findings as to disputed facts or credibility. Moreover, the parties' arguments reflect no factual dispute regarding the circumstances at issue.

---

[2] The offenses in this case were charged in two separate indictments, which were joined for trial.

Therefore, we will review the trial court's ruling on the motion in limine "to ensure that there was a substantial basis for it," and we review de novo the trial court's application of the law to the undisputed facts. *State v. Gaggini*, 321 Ga. App. 31, 32 (740 SE2d 845) (2013).

(a) We first address the State's assertion that Williams failed to preserve this issue for appellate review under the requirements of OCGA § 24-1-103 (a) (2). That statute provides that "[e]rror shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by an offer of proof or was apparent from the context within which questions were asked." The State asserts that Williams failed to make the requisite offer of proof to preserve his argument regarding the motion in limine.

However, we do not read OCGA § 24-1-103 (1) (b) as requiring a formal offer of proof in every instance, as it expressly states that error also may be preserved if the substance of the evidence is apparent from the record. See *Hand v. South Ga. Urology Center, P.C.*, __ Ga. App. __ (769 SE2d 814) (2015) (on motion for reconsideration) (requirements of OCGA § 24-1-103 (1) (b) met where the record was "replete with discussions between both parties and the trial court" regarding the content of the

3

evidence). We note that the comparable evidentiary rule under federal law,[3] Federal Rule of Evidence 103 (a) (2), "does not require that a formal offer of proof be made to preserve an objection." *United States v. Quinn*, 123 F3d 1415, 1420 (11th Cir. 1997). Rather, "[w]here the substance of the evidence is apparent to the court from its context, an appellant is entitled to ordinary appellate review of a ruling excluding evidence." Id.

The trial considered the matter at a pre-trial hearing on the State's motion in limine seeking to exclude evidence regarding Detective Brock's affiliation with "an entity known as Uncle Wiggy," which, according to the prosecutor, led to Brock's leaving his employment with the Summerville Police Department. Williams' counsel further explained that Brock had developed a website and a publication called, *Uncle Wiggy's Secret Guide to Dealing With the Police* (the "Publication"). And he stated that, "among a lot other things," the Publication states, "remember, the police will try to trick you. The police can and will lie to you" (the "Statement"). Williams' counsel

---

[3] OCGA § 24-1-103 (1) (b) is part of Georgia's new Evidence Code, which became effective for trials occurring after January 1, 2013. See Ga. L. 2011, p. 99, § 101. "Because the new Evidence Code is patterned after the Federal Rules of Evidence, we will look to case law from federal courts within the Eleventh Circuit for guidance in interpreting these new statutes. See Ga. L. 2011, p. 99, § 1." *Flading v. State*, 327 Ga. App. 346, 351 (2), n. 6 (759 SE2d 67) (2014).

asserted that he sought to introduce evidence of the Statement on the issue of Brock's "credibility," "believability," "veracity," and "truthfulness." However, the trial judge granted the State's motion in limine without elaborating on his reasons for doing so.[4]

Although the better practice may have been to proffer the Publication into the record for consideration at both the trial and appellate levels, we find that the substance of the evidence at issue is sufficiently apparent from the attorneys' discussion to preserve Williams' argument for our review.

(b) Georgia's new Evidence Code, OCGA § 24-6-608, sets out specific, limited methods for attacking or supporting the credibility of a witness by evidence in the form of opinion or reputation. Specifically, with respect to this case, the pertinent limitation provides that "[t]he evidence may refer only to character for truthfulness or untruthfulness." OCGA § 24-6-608 (a) (1). Additionally, the statute provides that specific instances of a witness's conduct, "for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime . . . or

---

[4] Williams argues that the trial court applied the wrong standard in considering OCGA § 24-6-608, citing what it asserts are misstatements of the appropriate standard by the State during the argument on the issue. But we find no indication that the trial court misapplied the law. The trial judge stated that he was familiar with OCGA § 24-6-608 and never said that he was adopting the State's interpretation of that code section in granting the motion in limine.

conduct indicative of the witness's bias toward a party may *not* be proved by extrinsic evidence." (Emphasis supplied.) OCGA § 24-6-608 (b). "Such instances may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness[ c]oncerning the witness's character for truthfulness or untruthfulness." OCGA § 24-6-608 (b) (1).

Williams sought to cross-examine Brock about the Statement in the Publication that "police can and will lie." Williams argued that this Statement went directly to the issue of Brock's credibility, which he contends was crucial to proof of identity, as Brock was only one of two witnesses who had identified Williams as a participant in the three drug transactions. The record provides no express context for the Statement within the Publication, but the trial court said that he was "a little bit familiar" with the Uncle Wiggy website, and he drew the distinction between a police officer's credibility under oath and an officer's tactics during an investigation into a crime. It is well settled in Georgia that "the means used to obtain admissions in the nature of a confession [do] not prevent them from being free and voluntary notwithstanding the fact that they might have been obtained by artifice, trick or deception." *Moore v. State*, 230 Ga. 839, 840 (1) (199 SE2d 243) (1973) (holding defendant's statement admissible even though police lied to him about finding the murder weapon). See,

6

e.g., *Thorpe v. State*, 285 Ga. 604, 611 (6) (678 SE2d 913) (2009) (admission of defendant's "unguarded response to a perceived confidante," not barred where, unbeknownst to defendant, confidante was actually a state agent). Accordingly, within certain defined limits, police may lie to or trick a suspect, and thus the Statement itself is not untrue.

Moreover, even assuming that Brock's undefined "affiliation" with the Uncle Wiggy website and Publication somehow equates with his adoption or authorship of the Statement, we find that such a generalized statement about police conduct is not probative of Brock's own credibility in testifying under oath. A statement that "police can and will lie" does not constitute a specific instance of Brock's personal conduct, probative of his own truthfulness or untruthfulness and concerning his character for truthfulness or untruthfulness as required to allow cross-examination on the issue under OCGA § 24-6-608 (b) (1). Accordingly, we conclude that the trial court had a substantive basis for granting the State's motion in limine and for prohibiting Williams' inquiry into the Statement on cross-examination.

2. Williams next asserts that the trial court erred in denying his motion for new trial on the ground that a fatal variance existed between the proof at trial and the allegations of the indictments charging him with possession of a controlled substance

7

with intent to distribute within 1,000 feet of a Summerville Housing Authority housing project. Specifically, he asserts that the State failed to prove that the address stated in the indictment was a Summerville Housing Authority housing project as charged.

OCGA § 16-13-32.5 (b) provides, in pertinent part, that it is "unlawful for any person to . . . possess with intent to distribute a controlled substance . . . in, on, or within 1,000 feet of any real property of any publicly owned or publicly operated housing project." And the statute defines the term "housing project" to mean "any facilities under the jurisdiction of a housing authority which constitute single or multifamily dwelling units occupied by low and moderate-income families pursuant to Chapter 3 of Title 8." OCGA § 16-13-32.5 (b). One indictment charged that Williams "did possess with intent to distribute cocaine, a controlled substance, within 1,000 feet of a Summerville Housing Authority housing project, a publicly operated housing project located at 151 Hawkins Drive, Summerville, Chatooga County, Georgia" and the second charged that the prohibited activity occurred "within 1,000 feet of a publicly owned and operated housing project to wit: Summerville Housing Authority, 151 Hawkins Drive, Summerville, Chattooga County, Georgia."

8

Williams asserts that at no point during the trial did any witness testify that 151 Hawkins Drive was owned or operated by the Summerville Housing Authority, that the address contained dwellings that were occupied by low and moderate-income families, or that Williams possessed a controlled substance near that address. And thus, he asserts that a fatal variance in proof occurred.

However, as this Court has previously explained, "[w]e no longer adhere to an overly technical application of the fatal variance rule, focusing instead on materiality." (Citation omitted.) *Chambers v. State*, 284 Ga. App. 400, 401 (1) (643 SE2d 871) (2007).

> The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance "fatal."

Id.

At trial, Parrish testified that the drug transactions occurred at the back corner of a store on Hawkins Drive, which was "straight across" the street from the Summerville Housing Authority property. He also stated that a portion of the housing project was located on the same side of the street as the store. He described the distance between the back of the store and the Summerville Housing Authority property as being the same distance from the witness stand to the second or third row bench in the courtroom.

Brock testified about the location of the housing project in relation to a location know as the "Vann House." Brock stated that the store faced Highland Avenue at the corner of Hawkins Drive and that as one drives up Hawkins Drive, one first comes to the store's parking lot and then the side of the store. He further described that the Vann House was directly across Hawkins Drive from the store, and the housing project run by the Summerville Housing Authority "starts" directly behind the Vann House. Brock opined that the distance between the corner of the store and the housing project as being "a lot less" than 1,000 feet. From his measurements at the time, the distance between a tree in the store parking lot to the Housing Authority property was 111 feet. Brock also stated that the housing projects were for low income families.

Based on this evidence and the evidence presented at the hearing on the motion fore new trial showing that a housing project operated by the Summerville Housing Authority existed in the 100 block of Hawkins Drive, we find that any variance between the indictment and the proof at trial did not misinform or mislead Williams in any way that would have surprised him at trial or impaired his ability to prepare his defense. We also find that the allegations of the indictment were sufficient to protect him from being subjected to another prosecution for the same offense. Accordingly, no fatal variance occurred and the trial court properly denied his motion for new trial on this ground. See *Chambers*, 284 Ga. App. at 402 (1) (no fatal variance in indictment alleging burglary occurred at non-existent street number on a certain street and the burglary actually occurred at property with three different street numbers next to each other on the same street); *Jackson v. State*, 217 Ga. App. 485, 490 (5) (458 SE2d 153) (1995) (physical precedent only) (no fatal variance where indictment alleged that burglary occurred at dwelling of "Bobby Jackson, located at 1892 Highway 92 South," and proof at trial showed that burglary occurred at *1889* Highway 92 South). Compare *Hunter v. State*, 155 Ga. App. 561, 561 (271 SE2d 694) (1980) (fatal variance occurred where indictment alleged burglary occurred at "West's Grocery" and evidence at trial showed that it occurred at "Dews Pond

11

Grocery" owned by a Mr. West where no evidence showed that the two stores were the same business establishment or that the business identified at trial was known by both names); *Charles v. State*, 167 Ga. App. 806, 807 (307 SE2d 703) (1983) (fatal variance found where victim owned five warehouses on three different streets in county and indictment alleged address on one street and proof showed burglary occurred at address on one of the other streets).[5]

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

---

[5] We note that *State v. Green*, 135 Ga. App. 622, 623 (218 SE2d 456) (1975) cited by Williams is also distinguishable as it involved a special demurrer to which this court necessarily applied a different standard. See e.g. *State v. Thomas*, 331 Ga. App. 220, 221 (770 SE2d 301) (2015) ("[A] defendant who has timely filed a special demurrer is entitled to an indictment perfect in form and substance.") (citation and punctuation omitted). However, we do not suggest that Williams' indictment would have been subject to a special demurrer.