**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 8, 2017**

# In the Court of Appeals of Georgia

A16A1488. DOUGLAS v. THE STATE.

DILLARD, Presiding Judge.

Following a jury trial, James Vernon Douglas was found guilty on one count of child molestation for viewing a pornographic video with his then four-year-old daughter.[1] Douglas appeals from this conviction, arguing that the trial court abused its discretion by failing to (1) excuse a juror for cause and (2) allow the defense to question the victim's mother as to her own previous false allegation of child molestation. For the reasons set forth *infra*, we affirm Douglas's conviction.

---

[1] The jury acquitted Douglas of a third count of child molestation and was hung as to a second count of child molestation, with the State subsequently entering a nolle prosequi as to that second count.

Viewed in the light most favorable to the jury's verdict,[2] the record reflects that in the summer of 2011, Douglas's daughter, M. D., visited with him overnight at his girlfriend's home in St. Mary's. Approximately one-and-a-half weeks after returning home to Florida, M. D.'s mother discovered the child with her pants removed, touching her genital area both inside and outside before licking her fingers. When the mother asked M. D. where she had learned to do such a thing, M. D. first responded with "nobody," which the mother found odd. But upon further questioning, M. D. admitted that "James, daddy" taught her that behavior. M. D. then made an outcry to her mother, describing sexual acts that Douglas allegedly performed on and with her, as well as a "dirty movie" that she watched with her father in which two adults engaged in various sexual acts. In the forensic interview that followed, M. D. repeated these same or similar allegations.

During the ensuing investigation by law enforcement, Douglas's cellular phone was searched, and ten pornographic videos were discovered in which adults engaged in various sexual acts. These videos were downloaded to the phone between March and May 2011. Law enforcement also discovered two .pdf files of fictional stories downloaded from a child-sex-stories website, which graphically described raping

_____

[2] *See, e.g.*, *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

girls five years old and younger. These stories were downloaded to the phone in May 2011.

At trial, Douglas's then ex-girlfriend testified that during the time period in question, Douglas had admitted to her that he would watch pornographic videos on his phone while away at his job as a truck driver. And Douglas, who testified in his own defense, also admitted to downloading pornographic videos to his phone, although he denied having knowledge about the child-rape stories, engaging in sexual acts with M. D., or showing M. D. pornographic videos.

The jury convicted Douglas of child molestation for "viewing a pornographic video with [M. D.] with the intent to arouse and satisfy [his] sexual desires . . . ." He was acquitted of a charge of child molestation based upon an allegation that he placed his penis on M. D.'s vagina. And the jury was hung as to a count of child molestation based upon an allegation that he placed his hand on M. D.'s vagina. This appeal follows the denial of Douglas's motion for new trial, which was filed after the trial court granted his motion for an out-of-time appeal.

1. Douglas first argues that the trial court abused its discretion by failing to excuse a prospective juror for cause after that juror expressed bias against him. We disagree.

It is well established that before a juror can be disqualified for cause, "it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence."[3] And the decision to strike a juror for cause "lies within the sound discretion of the trial court, and that decision will not be disturbed absent an abuse of discretion."[4]

Here, Douglas contends that the trial court abused its discretion by failing to strike a prospective juror who volunteered that he would feel uncomfortable serving as a juror because he was the father of "two young daughters." When pressed on the matter, the prospective juror agreed with the statement that, "whether or not [Douglas] did anything," he would have "negative feelings for [Douglas] just because [M. D.] had to come and testify." The prospective juror further agreed that "just the

[3] *Haynes v. State*, 326 Ga. App. 336, 339 (2) (756 SE2d 599) (2014) (punctuation omitted); *accord Foster v. State*, 271 Ga. App. 426, 428 (2) (609 SE2d 751) (2005); *Torres v. State*, 253 Ga. App. 318, 319 (2) (558 SE2d 850) (2002).

[4] *Haynes*, 326 Ga. App. at 339 (2) (punctuation omitted); *accord Foster v. State*, 271 Ga. App. at 428 (2); *Torres*, 253 Ga. App. at 319-20 (2); *see also Ashmid v. State*, 316 Ga. App. 550, 554 (2) (730 SE2d 37) (2012) ("[T]rial courts have broad discretion to evaluate and rule upon a potential juror's impartiality, based upon the ordinary general rules of human experience. In this regard, a trial court may only be reversed upon a finding of manifest abuse of that discretion." (footnote and punctuation omitted)).

fact that [M. D.] [would] have to come and testify, irrespective of whether [Douglas] did what they say he did, [his] sympathy for the child [was] going to bleed over into some negative feelings against [Douglas] just because [M. D.] had to come [to court]." The prospective juror then explained that because he also had a granddaughter, "it will be very hard because [they are] about the same age."

When defense counsel continued to question the prospective juror as to whether or not he would be able to put his feelings aside, the juror responded that "it would be very hard being impartial because . . . it's hard to hear a kid talking and—the innocence of a child is very powerful." Defense counsel then asked if the prospective juror would "hold it against [Douglas], it doesn't matter what the evidence is that comes out, just the fact that there's been a charge and [M. D.] had to come here, that is going to sway you to some degree or another?" To this, the prospective juror responded as follows (with intermittent interruptions by defense counsel, as denoted by ellipses): "What I'm saying is. . . . Well, now, let me be clear. . . . You know if the proof is different, I would have to go with that, but, you know, it will be harder. . . . —you know, to come to that part, especially when, you know, you have a kid here."

When the defense moved to strike the prospective juror for cause, the trial court denied the motion because the court determined that the juror "indicated that [M. D. testifying] would cause him some discomfort, but that he could listen to the evidence, and depend[ ] on what the evidence reflected . . . ." As the trial court determined, the record reflects that the juror was willing to consider the evidence and knew that "if the proof [was] different" he would "have to go with that," although he admitted that doing so would be more difficult due to the fact that a child would testify, *i.e.*, due to the nature of the crime as involving a child victim. And we have previously held that a juror who "expresses a willingness to try to be objective and whose bias arises from feelings about the particular crime as opposed to feelings about the accused may be eligible for service."[5] Thus, under these particular circumstances, we cannot say that the trial court manifestly abused its discretion in failing to strike the prospective juror for cause.[6]

---

[5] *Weeks v. State*, 270 Ga. App. 889, 896 (4) (608 SE2d 259) (2004) (punctuation omitted); *accord Beaudoin v. State*, 311 Ga. App. 91, 93 (2) (714 SE2d 624) (2011); *Reddick v. State*, 264 Ga. App. 487, 496 (5) (a) (591 SE2d 392) (2003), *overruled on other grounds by State v. Springer*, 297 Ga. 376 (774 SE2d 106) (2015).

[6] *See Parrott v. State*, 318 Ga. App. 545, 550-51 (2) (736 SE2d 436) (2012) (holding that trial court did not abuse its discretion in failing to excuse juror for cause when "juror indicated that her bias was against the nature of the crime rather than against [the defendant personally], and because she said she could determine the

2. Finally, Douglas contends that the trial court abused its discretion by failing to allow him to question the victim's mother as to her own previous false allegation of child molestation. Once again, we disagree.

First, we note that because this case was tried after January 1, 2013, our new Evidence Code applies.[7] And OCGA § 24-6-608 provides "very specific, limited

issues fairly based upon the evidence presented"); *Foster*, 271 Ga. App. at 428-30 (3) (holding, when juror expressed willingness to try to be objective and her bias arose from feelings about particular crime as opposed to feelings about defendant, that it was not an abuse of discretion to fail to strike juror for cause who had reservations about ability to be fair in statutory rape, child molestation, and enticing a child for indecent purposes prosecution because her daughter was molested and she was subpoenaed for her daughter's trial the same week); *Weeks*, 270 Ga. App. at 896 (4) (holding that trial court did not abuse its discretion in failing to strike a prospective juror who "expressed his discomfort with hearing facts associated with a child molestation case and a tendency to accept the word of a child, [but who] said that he would nevertheless make every effort to determine the case based upon the facts and the law").

[7] *See* Ga. L. 2011, pp. 99, 214, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013). Of course, "[m]any provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit." *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016).

methods for attacking or supporting the credibility of a witness by evidence in the form of opinion or reputation."[8] Indeed, under that portion of the statute,

> [t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, subject to the following limitations:
>
> (1) The evidence may refer only to character for truthfulness or untruthfulness; and
>
> (2) Evidence of truthful character shall be admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.[9]

OCGA § 24-6-608 also provides that the use of "specific instances of a witness's conduct, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime or conduct indicative of the witness's

---

[8] *Gaskin v. State*, 334 Ga. App. 758, 761 (1) (a) (780 SE2d 426) (2015) (punctuation omitted); *accord Williams v. State*, 332 Ga. App. 546, 548 (1) (b) (774 SE2d 126) (2015).

[9] OCGA § 24-6-608 (a).

bias toward a party may *not* be proved by extrinsic evidence."[10] In the trial court's discretion, however, evidence of specific instances of conduct,

> *if probative of truthfulness or untruthfulness*, [may] be inquired into on cross-examination of the witness:
>
> (1) Concerning the witness's character for truthfulness or untruthfulness; or
>
> (2) Concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.[11]

And because OCGA § 24-6-608 (b) "places the decision whether to admit specific instances of conduct within the trial court's discretion, we will reverse the trial court's ruling only on a clear abuse of that discretion."[12]

---

[10] *Williams v. State*, 332 Ga. App. 546, 548-49 (1) (b) (774 SE2d 126) (2015) (punctuation omitted), *quoting* OCGA § 24-6-608 (b); *accord Gaskin*, 334 Ga. App. at 762 (1) (a).

[11] OCGA § 24-6-608 (b) (emphasis supplied); *accord Gaskin*, 334 Ga. App. at 762 (1) (a); *see also Williams*, 332 Ga. App. at 549 (1) (b) ("Such instances may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness." (punctuation omitted)).

[12] *Gaskin*, 334 Ga. App. at 762 (1) (a); *see Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015) (adopting federal "clear abuse of discretion" standard for

9

In this case, Douglas takes issue with the trial court's failure to allow cross-examination of M. D.'s mother as to her own allegations of molestation by her stepfather, which Douglas's counsel contended were false allegations because the stepfather was acquitted of same. Douglas suggests that if the mother made a false accusation against her own stepfather, she was likely to have coached M. D. to make a false accusation against him. But regardless of whether such a line of inquiry would be permissible under OCGA § 24-6-608 (b) (when Douglas sought to use the *mother's* alleged prior false allegations of sexual misconduct not only to question *her* credibility but also to indirectly question *M. D.'s* credibility as well),[13] we cannot say

introduction of evidence under Fed. R. Evid. 403 and 404 (b)). *See generally* Paul S. Milich, COURTROOM HANDBOOK ON GEORGIA EVIDENCE, (I) *Impeachment–Untruthful Acts* (2016 ed.) ("Since this second form of impeachment is expressly made at the discretion of the trial court, counsel should inform the court and opposing party, outside the hearing of the jury, of intent to inquire into such matters. The trial court should permit the inquiry if the credibility of the witness is a key issue in the case, counsel has reliable facts as a basis for the inquiry, the prior incident is truly probative of the witness's truthfulness, and usefulness of the inquiry is not otherwise outweighed by any prejudicial effects, including confusing the jury or wasting time.").

[13] *See* RONALD L. CARLSON & MICHAEL SCOTT CARLSON, CARLSON ON EVIDENCE, p. 327 (4th ed. 2016) ("Prior false allegations of sexual misconduct are considered in federal and state courts under Rule 608 (b)); *cf. Wand v. State*, 230 Ga. App. 460, 463 (2) (c) (496 SE2d 771) (1998) (physical precedent only) ("Showing the victim made previous false allegations is directly relevant to the question of [the] defendant's guilt; showing the victim's mother reported those allegations does not

that the trial court abused its discretion in precluding any such cross-examination under the circumstances outlined in this opinion.[14] Indeed, the fact that M. D.'s mother's stepfather was acquitted on charges of molestation does not necessarily

---

affect the victim's credibility. The relevance of the mother's reporting is marginal."); *State v. R. E. B.*, 895 A2d 1224, 1229 (II) (A) (N.J. Super. 2006) ("[T]he trial judge must determine at a [Rule] 104 hearing, by a preponderance of the evidence, whether the defendant has proven that a prior accusation charging criminal conduct was made *by the victim* and whether that accusation was false. If defendant meets this burden, then the trial judge must consider specific factors . . . to determine admissibility of the evidence." (emphasis supplied) (punctuation and citations omitted)). *But cf. Wand*, 230 Ga. App. at 466 (Smith, J., concurring specially and in judgment only) ("I cannot agree that the relevance of the mother's credibility in this case is 'marginal,' as stated by the majority. She reported the alleged incident to the police, and alleged evidence of prior similar false allegations could impact on her credibility and propensity for making such allegations.").

[14] Despite the fact that the trial court denied Douglas's request to cross-examine the mother on this subject under relevance and OCGA § 24-6-608, and the fact that the State argued same below and does so again on appeal, Douglas's appellate brief does not discuss the new Evidence Code or any federal cases that address this type of questioning under Federal Rule 608. Instead, he relies solely on cases that were decided under our prior Evidence Code. We remind Douglas's counsel of "the importance of relying upon the new Evidence Code, as well as its accompanying case law, in addressing evidentiary issues arising after the new code's effective date." *Patch v. State*, 337 Ga. App. 233, 241 (2) n.21 (786 SE2d 882) (2016); *see also Stratacos v. State*, 293 Ga. 401, 408 (2) (b) n.10 (748 SE2d 828) (2013) ("[I]t is always risky for courts to rely on a precedent interpreting a statute or other legal text without first examining whether the legal text on which the precedent was based has been revised and then considering the effect of any such change. . . . And we add that courts relying on old precedents regarding evidentiary issues should be particularly attuned to this risk in light of Georgia's new Evidence Code.").

mean that the mother's accusations against her stepfather were false, and Douglas

offered no other proof of falsity during his proffer, such as a recantation by the

mother.[15] Additionally, this specific instance of conduct was temporally remote from

M. D.'s allegations against Douglas, and there was no showing of any similarity

between the mother's accusations against her stepfather and M. D.'s allegations

---

[15] *See Beverley v. Romanowski*, Case No. 13-14470, 2016 WL 3031380, at *4 (IV) (A) (2) (b) (E.D. Mich. May 27, 2016) (noting that an acquittal alone does not necessarily mean that a prior accusation was false); *Capshaw v. Commonwealth*, 253 SW3d 557, 566 (III) (A) (Ky. Ct. App. 2007) ("[A]bsent a showing that [the victim's] prior accusations are in fact false, either by her recanting them or having been proved false, such as by physical evidence, the trial court acted properly in excluding the evidence."). *See generally* CARLSON, *supra* note 13, p. 229 ("Courts have held that before purportedly false prior complaints of sexual abuse can be admitted, a trial judge must determine at a Rule 104 hearing, by a preponderance of the evidence, whether the defendant has proven that a prior accusation charging criminal conduct was made by the victim and whether that accusation was false."). *But see Perry v. State*, 622 NE2d 975, 980 (II) (C) (1993) (noting that in a prior case, court "upheld the exclusion of an allegedly false prior accusation of sexual misconduct where the proponent of that evidence failed to show either that the victim had admitted the falsity of the accusation, or that there had been a trial and the person charged had been found not guilty").

against Douglas.[16] Thus, it was not an abuse of discretion to preclude questioning as to this specific instance of conduct.[17]

Furthermore, even if the trial court erred in precluding Douglas's cross-examination of M. D.'s mother, the error was harmless.[18] The standard for weighing nonconstitutional error in criminal cases is the "highly probable test" or, in other

---

[16] *See State v. R. E. B.*, 895 A2d 1224, 1229 (II) (A) (N.J. Super. 2006) (noting that if a defendant meets the burden of showing that *victim* made a prior accusation charging criminal conduct that was false, then the trial judge must determine admissibility of the evidence by considering "whether the victim's credibility is the central issue, the similarity of the prior false accusation to the crime charged, the proximity of the prior false accusation to the current charges, the number of witnesses, the items of extrinsic evidence, the time required for presentation of the issue, and whether the false accusation's probative value will be outweighed by undue prejudice, confusion of the issues, and waste of time" (emphasis supplied) (punctuation and citations omitted)).

[17] *See United States v. Augustin*, 661 F3d 1105, 1128 (VI) (11th Cir. 2011) (holding that district court did not abuse its discretion by precluding cross-examination of a witness regarding a failed polygraph test over a decade earlier, and acknowledging the "substantial limitations to the reliability of polygraphs");*United States v. Novaton*, 271 F3d 968, 1006-07 (II) (F) (11th Cir. 2001) (holding that trial court properly precluded cross-examination questioning as to specific instance of conduct that was temporally remote from testimony given at trial, having occurred more than six years prior to trial); *see also United States v. Crow Eagle*, 705 F3d 325, 328 (III) (8th Cir. 2013) ("The [Sixth Amendment] right of confrontation . . . does not permit the impeachment of a victim with (alleged) prior false allegations if their probative value is weak.").

[18] *See* OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.")

words, that it is "highly probable that the error did not contribute to the judgment."[19] And under this test, "a reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict would have been different in the absence of this error."[20]

Here, Douglas's sole conviction for child molestation was based upon M. D.'s repeated allegation (both to her mother, the forensic interviewer, and in her trial testimony) that Douglas showed her a "dirty" or "nasty" movie on his phone, which she described as containing adults engaged in sexual activities. Additionally, Douglas's ex-girlfriend testified that he admitted to having and watching pornography on his phone during the relevant time period, and Douglas testified to the same when he took the stand in his own defense. And, of course, law enforcement not only located ten pornographic videos on Douglas's phone but also two .pdf documents containing stories that graphically depicted the rapes of girls five-years-old and younger—and M. D. was four years old when she claimed that Douglas viewed the pornographic video with her on his phone. Thus, in light of this evidence,

---

[19] *Gaskin*, 334 Ga. App. at 763-64 (1) (b); *accord Leverette v. State*, 303 Ga. App. 849, 852 (2) (696 SE2d 62) (2010).

[20] *Gaskin*, 334 Ga. App. at 764 (1) (b); *accord Leverette*, 303 Ga. App. at 852 (2).

14

it is highly probable that if the trial court erred in precluding the cross-examination discussed *supra*, the error did not contribute to the jury's verdict.[21]

Accordingly, for all of the foregoing reasons, we affirm Douglas's conviction for child molestation.

*Judgment affirmed. Reese and Bethel, JJ., concur.*

---

[21] *See Goldey v. State*, 289 Ga. App. 198, 198-99 (1) (656 SE2d 549) (2008) (holding that error, if any, in court's failure to prohibit evidence, was harmless in child molestation prosecution given overwhelming evidence of defendant's guilt, including testimony of victim and outcry witnesses, corroborative evidence such as videotape and underwear described by victim, and numerous handwritten notes); *In the Interest of M. G.*, 239 Ga. App. 787, 790 (521 SE2d 918) (1999) (holding, under prior Evidence Code, that trial court erred by failing to permit cross-examination of outcry witness about prior false allegations of molestation he had made regarding children in his care, but concluding that error was harmless when multiple outcry witnesses testified, and the victim testified and was cross-examined at length). *Cf. Gaskin*, 334 Ga. App. at 764-65 (1) (b) (holding that the erroneous admission of evidence of defendant's prior arrests was not harmless in prosecution for child molestation when jury was presented with conflicting witness testimony, there was no medical evidence to support charges, victim's description of extent of defendant's conduct varied over time, and victim refused to testify about incident at trial); *Goldstein v. State*, 283 Ga. App. 1, 4-6 (3) (a) (640 SE2d 599) (2006) (holding that defendant was prejudiced by trial counsel's ineffective assistance when counsel failed to present evidence of victim's mothers' numerous prior false allegations of her own molestation, spanning from childhood into adulthood, and holding that mother's false complaints were "highly relevant, both to her own credibility and also to that of the young victim, whose mother's prior and persistent claims of molestation could surely be expected to affect the victim's own attitude, behavior, and outlook").