307 Ga. 494
FINAL COPY

S19A1087.  BALLIN v. THE STATE.

BETHEL, Justice.

Following her conviction for the murder of her husband, Derrick Ballin, Pamela Lelieth Ballin appeals from the denial of her motion for a new trial.[1] Ballin argues that the trial court erred when it admitted evidence that she was the beneficiary of insurance policies on her husband's life and that the trial court wrongly denied her motion for a mistrial following an improper statement by the

[1] The crimes occurred on December 29, 2009. On August 6, 2013, a DeKalb County grand jury indicted Ballin for malice murder, felony murder predicated on aggravated assault, and aggravated assault. Ballin was initially tried by a jury in June 2014 and found guilty on all counts. The trial court, however, granted Ballin's motion for a new trial on July 25, 2016, after finding that the State gave her insufficient notice of a newly hired crime scene analysis expert. Ballin was retried on May 15-26, 2017, and the jury found her guilty on all counts. The trial court sentenced Ballin to life in prison for malice murder. The aggravated assault count merged with the malice murder count, and the felony murder count was vacated by operation of law.
Ballin filed a motion for new trial on June 7, 2017. Following a January 31, 2019 hearing, the trial court denied the motion on February 4, 2019. Ballin filed a notice of appeal to this Court on February 5, 2019. The case was docketed in this Court to the August 2019 term and was orally argued on August 20, 2019.

prosecution. Although the trial court erroneously applied an evidentiary standard from cases decided under the former Evidence Code in admitting evidence of the life insurance policies and related testimony, we hold that the overall strength of the evidence against Ballin rendered harmless any error. Further, Ballin's claim of error with respect to the denial of her motion for a mistrial lacks merit. We therefore affirm.

Viewed in the light most favorable to the verdicts, the evidence presented at trial shows the following. Ballin and her husband, Derrick "Ricky" Ballin, had been married since 1985 and shared a son. Throughout their marriage, both Ballin and Ricky had extramarital affairs, including in the months prior to Ricky's death. Ricky had confided in another that he had plans to leave the marriage, and Ballin stated to a neighbor that she planned to leave the marital home.

On December 29, 2009, at around 2:00 a.m., Ballin called 911 and reported a home invasion. When officers arrived, they found Ricky at the bottom of a stairwell, bleeding profusely. Ricky had

been struck in the head multiple times and a bloody statue was found near him. Ricky ultimately died from his injuries later that day.

Ballin told police that she woke up to use the restroom, but heard Ricky struggling with someone. She then hid and called 911. Ballin reportedly remained hidden until she heard officers at the front door. Officers noted that the scene, which included pry marks on the locked back door and a butter knife found nearby, appeared staged and that nothing appeared to have been broken or taken. Further, there were no signs of forced entry, and the exterior doors to the house were locked upon the arrival of police. Ballin gave differing accounts of where she was hiding in the house when she heard her husband call out for his gun during the alleged struggle. A blood-pattern analysis expert testified that it appeared Ricky had been struck while sitting in a recliner, before receiving several more blows at the bottom of the stairs where he was found by responding officers.

The State moved in limine to admit evidence of life insurance

3

policies for which Ballin was the beneficiary and related testimony, arguing that her rights to the proceeds of such policies upon Ricky's death provided a motive for her to kill Ricky. At a pretrial hearing, Ballin objected to any mention of life insurance policies naming her as beneficiary. The trial court ruled that there was sufficient independent evidence of a nexus between the offense and the life insurance policies such that evidence pertaining to the policies could be admitted at trial as evidence of motive.[2] The trial court granted Ballin a "continuing objection" to the ruling on the life insurance policy evidence.[3]

1. Though not raised by Ballin as error, in accordance with this Court's standard practice in appeals of murder cases, we have reviewed the record and conclude that the evidence, as summarized above, was sufficient to enable a rational trier of fact to find Ballin

---

[2] Following this ruling, Ballin's trial counsel chose not to object to the introduction of the insurance policies themselves at trial.

[3] This continuing objection was not necessary under the current Evidence Code because "[o]nce the court makes a definitive ruling on the record admitting or excluding any evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve such claim of error for appeal." See OCGA § 24-1-103 (a).

4

guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Ballin, relying on cases decided under the former Evidence Code, contends that the trial court erred when it admitted evidence that she was the beneficiary of insurance policies on her husband's life in order to prove motive.[4] We disagree.

This Court previously held that evidence of insurance could be properly admitted where the State established some connection, or nexus, to the crime. See *Bagwell v. State*, 270 Ga. 175, 177 (1) (a) (508 SE2d 385) (1998) (holding that evidence of an insurance policy may be admitted if there is some independent evidence of a nexus between the crime charged and the existence of the insurance policy); *Stoudemire v. State*, 261 Ga. 49, 50 (3) (401 SE2d 482) (1991) (holding that in order to admit evidence of a life insurance policy where the accused was a beneficiary of the deceased's policy, there must be independent evidence creating a nexus between the crime

---

[4] Because Ballin's most recent trial was held after January 1, 2013, the current Evidence Code applied.

charged and the existence of the insurance policy).  See also *Bridges v. State*, 286 Ga. 535, 539 (4) (690 SE2d 136) (2010) (nexus existed where accused asked his employer about the policy on the day the murder was discovered, made it clear to others that he wanted and needed the insurance money, and told fellow inmates that he would be receiving the money); *Givens v. State*, 273 Ga. 818, 822 (3) (546 SE2d 509) (2001) (defense opened the door by introducing testimony regarding the life insurance policy, and testimony that the accused intended to pay the shooter with money from insurance proceeds satisfied the nexus requirement).

However, each of those cases was decided before Georgia adopted the current Evidence Code, which largely mirrors the Federal Rules of Evidence.  See *State v. Almanza*, 304 Ga. 553, 555 (2) (820 SE2d 1) (2018).  And Georgia appellate courts have repeatedly reminded both bench and bar of the importance of applying and arguing the correct law to evidentiary questions.  See, e.g., *State v. Orr*, 305 Ga. 729, 739 (3) n.9 (827 SE2d 892) (2019); *Davis v. State*, 299 Ga. 180, 192 (3) (787 SE2d 221) (2016).  See also

6

*Douglas v. State*, 340 Ga. App. 168, 173 (2) n.14 (796 SE2d 893) (2017); *Patch v. State*, 337 Ga. App. 233, 241 (2) n.21 (786 SE2d 882) (2016). The nexus rule established by cases like *Bagwell* and *Stoudemire* does not appear to have had any basis in state statute or any federal rule of evidence. Rather, the categorical rule seems to originate from judicial lawmaking — that is, it represents the Court's view of good policy and its best attempt to determine what evidence should be excluded as overly prejudicial. As such, that rule has been supplanted by OCGA § 24-4-403 ("Rule 403") in the current Evidence Code. See *Orr*, 305 Ga. at 735 (2).

Under the current Evidence Code, all relevant evidence is admissible, with specific exceptions. See OCGA § 24-4-402.[5] Pertinent here, relevant evidence may be excluded where its probative value is substantially outweighed by the danger of unfair

---

[5] OCGA § 24-4-402 provides:
> All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules, as prescribed pursuant to constitutional or statutory authority, applicable in the court in which the matter is pending. Evidence which is not relevant shall not be admissible.

prejudice. See OCGA § 24-4-403.[6] Rule 403's balancing of the probative value of the insurance policies and related testimony against the danger of unfair prejudice is a task properly reserved for the sound discretion of the trial judge, and exercise of this discretion to exclude otherwise admissible evidence "is an extraordinary remedy which should be used only sparingly." (Citation and punctuation omitted.) *Hood v. State*, 299 Ga. 95, 102 (4) (786 SE2d 648) (2016). In close cases, the balance is struck in favor of admissibility in determining whether the probative value is outweighed by the danger of unfair prejudice. See *Pike v. State*, 302 Ga. 795, 801 (4) (809 SE2d 756) (2018).

Here, however, there is no indication that the trial court exercised its discretion in performing the balancing test under Rule 403. Rather, the trial court determined that there was "sufficient independent evidence of a nexus between the offense and [the] life

---

[6] OCGA § 24-4-403 provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

insurance policies and that evidence requested by the State would meet the *Bagwell* test." Even so, the trial court's failure to exercise its discretion under the proper standard is harmless here. See *Jackson v. State*, 306 Ga. 69, 80 (2) (c) (829 SE2d 142) (2019) ("[T]he test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." (citation and punctuation omitted)). Even assuming that the trial court would have excluded the evidence if it had properly exercised its discretion, it is highly probable that any error in admitting the evidence did not contribute to the jury's verdict. "In determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so." (Citation and punctuation omitted.) *Kirby v. State*, 304 Ga. 472, 478 (3) (c) (819 SE2d 468) (2018).

The evidence presented at trial demonstrated Ballin's decreased interest in the marriage, as evidenced by her extramarital affairs and apparent intent to leave the marital home. Further, when officers arrived at the scene, they found the doors to the home

all locked, and the only people inside were Ballin and her husband, who was at the bottom of a stairwell, bleeding profusely. Officers noted that the scene, including pry marks on the locked back door and a butter knife found nearby, appeared staged and that nothing appeared to have been broken or taken. Further, there were no signs of forced entry. A blood-pattern analysis expert testified that it appeared Ricky had been initially struck while sitting in a recliner, and a bloody statue was found near him at the bottom of the stairs. Ballin also gave inconsistent statements about where she was hiding in the house when she heard her husband call out for his gun during the alleged struggle. In sum, given the overall strength of the other evidence of Ballin's guilt, we conclude that it is highly probable that the insurance evidence, even assuming it was erroneously admitted under Rule 403, did not contribute to the jury's verdict.

3. Ballin next argues that the trial court erred in denying her motion for a mistrial following an improper statement by the prosecution. We disagree.

During the State's cross-examination of a defense witness, the following colloquy transpired:

> PROSECUTOR: Let me ask it simply: Did you kill Ricky Ballin?
> WITNESS: Well, if you're asking me if I killed Ricky Ballin, why do you have Pamela Ballin on trial? That means you don't know who killed Ricky Ballin.
> PROSECUTOR: *No, I'm clear on who killed her.*
> WITNESS: So why are you asking me if I killed Ricky Ballin? What kind of question is that?

Following the comment emphasized above, Ballin moved for a mistrial. Counsel approached the bench and, following some discussion, the court ultimately denied Ballin's motion and gave the following curative instruction:

> Ladies and gentlemen, before we proceed, I want to instruct you as to the following: The statement recently made by [the prosecutor] that she has knowledge who committed the crime in this case was improper and should be disregarded by you. It is the State's burden in this case to prove the defendant's guilt beyond a reasonable doubt, and it is your duty to determine whether or not the State has met that burden of proof. So if you'll continue.

We agree with Ballin that the State's remark was improper. See *Powell v. State*, 291 Ga. 743, 745-746 (2) (733 SE2d 294) (2012); *Wyatt v. State*, 267 Ga. 860, 864 (2) (a) (485 SE2d 470) (1997).

11

Courts have correctly chastised prosecutors for arguing or even suggesting that "the government only prosecutes guilty people." This line of argument is forbidden because it implies that the prosecutor reached the determination that the defendant is guilty before trial and that the jury should weigh this fact in making its determination.

(Citation and punctuation omitted.) *Powell*, 291 Ga. at 745-746 (2). Nevertheless, we conclude that the improper remark of the prosecuting attorney in this case does not warrant reversal of the judgment below.

OCGA § 17-8-75 provides:

Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

"Whether to declare a mistrial is a question committed to the discretion of the trial judge, and the denial of a mistrial is reversible error only if it appears that a mistrial was essential to preserve the defendant's right to a fair trial." (Citation and punctuation omitted.) *Coleman v. State*, 301 Ga. 720, 722 (3) (804 SE2d 24) (2017).

12

Here, the trial court did not abuse its discretion when it determined that the grant of a mistrial was unnecessary to preserve Ballin's right to a fair trial given that the court almost immediately gave a curative instruction. See *McKibbins v. State*, 293 Ga. 843, 850 (3) (c) (750 SE2d 314) (2013) (no abuse of discretion in the denial of a motion for mistrial after improper statement by prosecutor, "especially because the trial court promptly admonished the prosecuting attorney and told the jury to disregard the statement"); *Hoerner v. State*, 246 Ga. 374, 375 (4) (271 SE2d 458) (1980) (denial of motion for mistrial based on prosecutor's statement that he personally believed the defendant had planned and directed the armed robbery and murder was not abuse of discretion, as the court instructed the jury to disregard the statement and rebuked the prosecutor). Although the prosecuting attorney ought not to have shared with the jury her personal belief regarding the guilt of the accused, this would have been a patently obvious reality, as the State was, in fact, arguing Ballin's guilt. In light of the considerable discretion afforded the trial court to deal with improper argument,

13

and especially because the trial court promptly indicated that the statement was improper and told the jury to disregard it, we cannot conclude that the trial court abused its discretion when it denied a mistrial.  See *Moore v. State*, 228 Ga. 662, 665 (4) (187 SE2d 277) (1972) (when "the trial court not only instruct[s] the jury not to consider such argument[s], but also rebuke[s] counsel," there generally is no abuse of discretion).

*Judgment affirmed.  All the Justices concur.*

DECIDED DECEMBER 23, 2019.
Murder. DeKalb Superior Court. Before Judge Flake.
*Brian Steel, Keith E. Adams*, for appellant.

*Sherry Boston, District Attorney, Emily K. Richardson, Deborah D. Wellborn, Yolanda R. Mack, Zina B. Gumbs, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General*, for appellee.