## A99A1727. DUNN v. THE STATE.
### (530 SE2d 236)

RUFFIN, Judge.

Wanda Dunn was convicted of three counts of aggravated assault, one count of aggravated battery, and one count of possession of a firearm during the commission of a crime. She appeals, contending primarily that the trial court erred in excluding testimony of prior difficulties between Dunn and one of the alleged victims. We affirm.

Lewis testified that, on the night of June 24, 1995, she and Katrina Emmanuel were driving in a gray Cadillac when they saw Dunn, in a burgundy Oldsmobile, talking with another woman. According to Lewis, Dunn had previously threatened to shoot Lewis' brother. After Dunn started yelling out of her car window, Lewis got out of her car and said, "[W]hat's going on? Why do you keep threatening me and my family?" Lewis said that Dunn then responded, "[Y]ou just wait right here, bitch, I'll be right back." Dunn claimed that Lewis pulled a gun from her car during this encounter, but both Lewis and Emmanuel denied that Lewis had a gun.[1] Lewis then left

---

[1] Dunn gave inconsistent testimony as to whether she actually saw a gun during the encounter:

Q. Isn't it true that you told [an officer] you never saw a gun and you had just went

and picked up her one-year-old daughter, Courtney. Dunn testified that she went home to retrieve a gun because she was scared that she might see Lewis again.

Lewis and Emmanuel testified that, after picking up Courtney, they were driving on Nellieville Road when they saw Dunn in her car at a stop sign. According to Lewis, Dunn pulled behind them and pointed a gun out the window. When Dunn tried to pull up to the side of Lewis' car, Lewis tried to run her off the road so that she could not shoot into the car. Lewis then sped up to try to get away, at which time she heard Dunn fire a shot. Dunn fired a second shot as Lewis was passing a car in front of her at a stop sign. Lewis turned left onto Fifteenth Avenue and got out of the car along with Emmanuel and Courtney. Dunn fired a third shot and then drove away. Although none of the shots hit Lewis' car, one of the bullets struck a fourteen-year-old bystander in the eye while she was sitting in a car several hundred feet away, resulting in the loss of the eye.

Dunn testified at trial and gave a different version of events. She testified that, after she went home to get her gun, Lewis pulled in front of her at a stop sign. Dunn said that she tried to pass Lewis' car but that Lewis "just started stopping [and] swerving . . . trying to keep me from going around her." Dunn said Lewis went around another car at a stop sign and parked beside a building. Dunn stopped at the stop sign and said, "[B]itch, why you trying to hit my car?" According to Dunn, Lewis then reached under her car seat. Dunn said she thought Lewis "was going to pull the pistol out but I didn't even give her the chance to." Dunn pulled her own pistol out and fired a shot. She claimed that she fired only one shot and that the pistol would not fire when she tried a second shot.

Officer Kenneth Booze testified that he interviewed Dunn after the shooting. Dunn admitted to Booze that she had fired at Lewis' car but claimed she did so in self-defense. When Booze asked Dunn what happened to the gun, she told him that she had given it to a friend to hide. They located this friend, and he showed Booze and Dunn where he had hidden the gun. Dunn told Booze that this was the gun she had used in the shooting. The gun, a Burser .380 caliber automatic pistol, was introduced into evidence at trial, and Dunn's attorney stipulated that the bullet that struck the bystander was fired from this weapon.

---

and got your gun in case she might have one?

A. No, I didn't see nothing but she told me that she had something.

Q. Okay, so you didn't see anything?

A. No.

Q. So when you just told this jury that on Bolt Avenue when she produced a .25 caliber pistol you really didn't see a gun?

A. Yes, I did.

1. In several enumerations, Dunn contends that the trial court improperly ruled that she could not present evidence of or mention in opening statements an altercation between Dunn and Lewis the night before the shooting, during which Lewis threatened Dunn and was seen to place a gun under the seat of her car. Dunn argues that this evidence would have supported her defense of justification.[2] However, although the trial court ruled that such evidence was inadmissible and prevented Dunn's attorney from mentioning it during opening statements, Dunn was in fact able to introduce such evidence during the trial. Several defense witnesses testified that, the night before the shooting, Lewis drove to Dunn's house and repeatedly threatened her. Among other things, the witnesses testified that Lewis repeatedly said, "I'm going to F you up, bitch," and "I've got something for you." Two of the witnesses said they heard Lewis say words to the effect of, "[Y]ou ain't going to be with your sister and them forever" and "I'm going to get you." One of the witnesses testified that she saw Lewis get a gun out of the trunk of her car and place it under the driver's seat. Another witness testified that she saw a gun on the seat of Lewis' car. Dunn herself also testified about Lewis' threats the night before the shooting, although she did not claim to see Lewis with a gun that night. Dunn testified that, after the altercation, she went out and bought a gun for self-defense.

Even if the trial court's initial ruling precluding evidence of prior difficulties between Dunn and Lewis was erroneous, Dunn has failed to show that she was harmed by such ruling, since she was subsequently allowed to present such evidence.[3] Nor has she shown how she was harmed by the failure to discuss such evidence in her opening statements. The trial court charged the jury on the defense of justification, and there is no indication that Dunn was prohibited from discussing the prior difficulties in closing arguments to support such

---

[2] The trial court based its ruling solely on Dunn's failure to comply with Uniform Superior Court Rule 31.6 by giving advance notice of her intent to offer evidence of prior difficulties between her and Lewis. Subsequently, however, the Supreme Court held that "the requirements of USCR 31.1 and 31.6 should no longer be imposed on a defendant when she seeks to introduce evidence of prior difficulties with the victim to support her claim of justification." *Owens v. State*, 270 Ga. 199, 202 (2) (509 SE2d 905) (1998). Although the State argues that *Owens* should not be applied to cases tried before it was issued, the fact that the Supreme Court reversed the defendant's conviction in *Owens* shows that it intended the decision to be applied retroactively.

[3] See *Johnson v. State*, 170 Ga. App. 433, 437 (6) (317 SE2d 213) (1984) (no harmful error in initial exclusion of certain testimony from two witnesses, where information desired by defendant was supplied by witnesses' subsequent testimony); *Smith v. State*, 237 Ga. App. 582, 585 (3) (516 SE2d 92) (1999) (additional testimony regarding victim's violent nature "would likely have been merely cumulative and was unlikely to have altered the verdict"); *Ware v. State*, 252 Ga. 90, 91 (4) (310 SE2d 908) (1984) (any error in refusing to allow testimony regarding threats made by victim rendered harmless by subsequent testimony that victim threatened to kill defendant).

a theory. Accordingly, it is highly unlikely the verdict would have been different had the trial court allowed Dunn to mention the prior difficulties evidence in her opening statements.

Dunn's contention that her trial counsel was ineffective in failing to comply with the notice requirements of Uniform Superior Court Rule 31.6 with respect to the prior difficulties evidence is also without merit. Since Dunn was in fact able to introduce evidence of the prior difficulties, she has not shown a reasonable probability that the outcome of the trial would have been different had her attorney complied with the rule.[4]

2. Dunn contends that there was no evidence of malice to support her conviction for aggravated battery in connection with the shooting of the innocent bystander. This contention is without merit. "A person acts 'maliciously' when [she] acts intentionally *and* without justification or serious provocation."[5] Viewed in the light most favorable to support the verdict, the evidence was more than sufficient for the jury to conclude that Dunn acted intentionally and without justification or serious provocation in firing the shot in question.[6] Although Dunn may not have intended to shoot the bystander, "when an unintended victim is struck down as a result of an unlawful act actually directed against someone else, the law . . . transfers the original intent from the one against whom it was directed to the one who actually suffered from it."[7]

3. Dunn contends that the trial court erred in allowing a police officer to read a statement given by a witness who had testified earlier in the trial. She argues that evidence of the witness' prior statement improperly bolstered his testimony and was inadmissible because "veracity of the . . . witness was not an issue."[8]

The witness at issue, Herbert Bush, testified that he was sitting on a bench at the intersection of Nellieville Road and Fifteenth Avenue when he

> saw a burgundy car come down the road right there . . . just by that sign and another white car pulled up beside of it and the lady said, don't hit my car. . . . She got as close as she

---

[4] See *Grant v. State*, 237 Ga. App. 892, 895-896 (3) (515 SE2d 872) (1999).

[5] (Emphasis in original.) *Wade v. State*, 258 Ga. 324, 330 (11) (d) (368 SE2d 482) (1988). See also *Roundtree v. State*, 227 Ga. App. 777 (490 SE2d 526) (1997).

[6] See *Harden v. State*, 164 Ga. App. 59, 60 (2) (296 SE2d 372) (1982) (whether defendant acted maliciously in striking victim was for jury).

[7] (Punctuation omitted.) *Happoldt v. State*, 267 Ga. 126, 127 (1) (b) (475 SE2d 627) (1996).

[8] See *Woodard v. State*, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998) (witness' veracity is placed in issue so as to permit introduction of prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination).

could over there against the side and she said a kind of little nasty word and then she fired her gun a couple of times. I heard it a couple of times.

On cross-examination, Dunn's attorney attempted to portray Bush as an alcoholic who drank "every day of his life," and who had been forced to spend the previous night in jail because he showed up for court drunk. He also questioned Bush about inconsistencies between his testimony and the statement he had earlier given to the police:

Q. [W]hen you first gave a statement you said that the person in the burgundy car yelled out of her car, bitch, what are you trying to do, hit my car, is that right?
A. Yes, sir, that's right. I didn't want to come out and say that kind of word, you know.
Q. Yes, sir, I understand that and I appreciate that. But that . . . when you first gave the statement to the police officer and it was written out here, you said, bitch, what are you trying to do . . . you said the person in the burgundy car said, bitch, what are you trying to do, hit my car, isn't that right?
A. Yes.
Q. All right, and then when you described the incident you said that the driver of the burgundy car pulled out a pistol and fired one shot, isn't that right?
A. Twice, fired twice.
Q. Yes, sir, do you see two in this statement? . . .
A. No, sir, I don't see but one down.

Dunn's attorney continued to cross-examine Bush regarding the fact that he had previously stated that only one shot was fired. He also got Bush to admit that he had very bad vision and could barely read a piece of paper.

Officer Booze later testified that he had taken Bush's statement after the shooting. The statement was reduced to writing by another officer and read back to Bush, who signed it. Over objection, the court allowed Booze to read the statement to the jury, and Booze testified as follows:

Okay, three cars were eastbound on Nellieville Street, first vehicle NOD, meaning no other description, second vehicle blue Caddy, third vehicle burgundy Olds. Number two vehicle was making a left turn when vehicle three pulled up beside the vehicle half on the curb and road. A female got out of the driver's seat in vehicle three and hollered, bitch, what are you trying to do, hit my car? The driver pulled out

a pistol and fired one shot at vehicle two that was leaving the scene. Driver of vehicle three got back in her car and made a right turn onto 15th Avenue and left the scene. Witness also stated the weapon was a blue steel pistol.

On appeal, Dunn does not argue that introduction of the statement was harmful, except to state generally that it "could have had the effect of bolstering [Bush's] testimony." Nor does she point to any particular portion of the statement as being prejudicial. Pretermitting whether Bush's veracity was sufficiently "placed in issue" so as to allow the introduction of a prior consistent statement,[9] Dunn has not shown how she was harmed by the reading of the statement. The first part of the statement adds little if anything to the abundance of testimony regarding how the cars arrived at the intersection. With respect to the next part of the statement, dealing with Dunn's cursing at Lewis, Dunn's own attorney read this portion of the statement into the record and questioned Bush about it. Thus, the officer's testimony regarding this part of the statement was merely duplicative of evidence that Dunn herself had already offered. The next portion of the statement, indicating that Dunn fired only one shot instead of two, tended to impeach Bush's testimony rather than bolster it and supported Dunn's version of events. Indeed, Dunn's attorney had already questioned Bush about the content of this portion in an attempt to get Bush to admit that he had previously stated that only one shot was fired. With respect to the final part of the statement, describing the weapon as a blue steel pistol, Dunn does not contend that admission of this statement in any way affected the outcome of the trial. Indeed, Dunn stipulated at trial that the bullet was fired from the Burser .380 caliber pistol she had previously given to Officer Booze, and the pistol itself was introduced in evidence.

In light of the fact that Dunn's attorney extensively cross-examined Bush regarding the written statement, that the statement tended to impeach rather than bolster Bush's testimony on the key issue of how many shots were fired, and that other portions of the statement were either relatively immaterial or duplicative of essentially undisputed testimony, we believe it is highly unlikely that allowing the officer to read the statement affected the outcome of the trial. Accordingly, any error in allowing such testimony was harmless.[10]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

---

[9] See id.

[10] See *Brooks v. State*, 232 Ga. App. 115, 120 (18) (501 SE2d 286) (1998); *Bright v. State*, 238 Ga. App. 876, 880 (4) (520 SE2d 48) (1999).

DECIDED FEBRUARY 29, 2000.

*Stanley C. House*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.