**FIFTH DIVISION
MCFADDEN, C. J.,
BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 30, 2017**

# In the Court of Appeals of Georgia

A16A1900. MOORE et al. v. JACKSON

BETHEL, Judge.

Ruth Dowdy Moore and Lounell Dorminey appeal from the denial of their motion for a new trial after a jury returned a verdict in favor of William Edmund Jackson in regard to his petition to quiet title to certain property. On appeal, Moore and Dorminey first argue that the jury's verdict was contrary to law and was contrary to, and strongly against, the evidence presented at trial. Second, Moore and Dorminey argue that the trial court erred by granting Jackson's motion in limine to exclude evidence of acts and declarations of a common grantor of the property in question. Moore and Dorminey argue that this error prevented them from making an effective opening statement to the jury because, although the trial court reversed its decision and permitted such evidence to be admitted at trial, they could not refer to it in their

opening statement. Third, Moore and Dorminey argue that the trial court should have realigned the parties, as they contend that the only issue before the jury was whether Moore and Dorminey could establish adverse possession of the property in question. Because these enumerations of error are meritless, we affirm the jury's verdict and the denial of Moore and Dorminey's motion for a new trial.

Following a jury verdict, "[t]his Court must view all of the evidence and every presumption arising therefrom most favorably toward upholding the jury's verdict." *Davis v. Johnson*, 280 Ga. App. 318, 321 (1) (634 SE2d 108) (2006) (citation omitted). So viewed, Jackson filed a petition to quiet title in the Dooly County Superior Court in regard to a particular piece of property. He claimed to own all of a certain portion of Land Lot 32 in Dooly County that extended south to the Crisp County line.

Records presented at trial showed that Land Lot 32 sits at the far south end of Dooly County, with its southern edge terminating at the Crisp County line (which runs east-to-west). That portion of Land Lot 32 also abuts the confluence of several roads to the east. The southeast corner of Land Lot 32 sits at the center of the intersection of Cown Road and Sharon Church Road at the Dooly-Crisp county line.[1]

---

[1]The southern portion of Dooly County was made into Crisp County in 1905.

To the north of that intersection (and thus to the north of the Dooly-Crisp county Line) the center line of County Line Road runs east-to-west.

In his petition, Jackson claimed that he held title to property in Land Lot 32 that extends to the Dooly-Crisp county line, under a 1993 grant from his father. Moore responded to the petition and asserted a claim of adverse possession, claiming that she and predecessors had resided upon and adversely possessed the property between the center line of County Line Road and the actual Dooly-Crisp county line for over fifty years. Dorminey also answered the petition, making similar claims.

The evidence presented at trial showed that, prior to 1956, a man named Joseph Brown owned a large tract of property that extended across both sides the Dooly-Crisp county line. In 1956, Lounell Dorminey and her husband bought 100 acres of this property from Joseph Brown. They understood their 100 acres to lie south of the Dooly-Crisp county line and to sit entirely within Crisp County. According to testimony presented at trial, as part of their negotiations with Brown, Brown walked the line between what he was selling and what he was retaining, beginning in the center of County Line Road and walking due west to a shed on his farm where a pecan tree grew. The testimony indicated that this was understood to be the county line and that the land south of the line was being sold to the Dormineys. The actual

3

line between Dooly and Crisp counties was actually approximately 60 feet to the south of where Brown walked that day.

After the sale, the Dormineys took possession of the property south of the line walked by Brown. They later cleaned and cleared the land. They only paid property taxes to Crisp County and never paid any taxes to Dooly County.

In 1956, Joseph Brown sold his land north of the actual Dooly-Crisp county line to Billy Jackson, the father of William Edmund Jackson (the appellee). Billy Jackson farmed on the land he received until his death in 1991. The property was devised to William Edmund Jackson pursuant to Billy Jackson's will.

The Dormineys sold one-half acre of their property in 1965 to W.D. Dowdy, the father of Lounell Dorminey and Ruth Moore. Dowdy built a house on it and then had the property surveyed. According to the 1965 survey, the northern corner of the house was only 5.7 feet south of the property line. Mr. Dowdy never questioned the accuracy of this survey, and he filed it in Crisp County in 1965. He later built a well house on the property that sat approximately two feet south of the Dooly-Crisp county line. Mr. Dowdy cut the grass around his house and planted pear trees all in an area that extended northward across the actual Dooly-Crisp county line. Testimony from

4

William Edmund Jackson and Lounell Dorminey established that he did this with the permission of Billy Jackson.

After Dowdy died in 1991, Ruth Moore bought the property, including the home. She indicated that, at the time she purchased the land, she understood that her property was entirely within Crisp County. She only paid Crisp County property taxes and never paid Dooly County taxes. Moore mowed and maintained this same area of the yard that her father had mowed and maintained when he owned the property.

In 1995, after Moore moved into the house, she decided to make an addition to it. William Jackson objected, noting that her planned addition would place her too close to the northern line of her property. That addition was never made. However, in 2010, she began building a car port adjacent to the house. Jackson objected at that time, asking Moore "y'all are determined to build into Dooly County aren't you?" Despite Jackson's objections, Moore completed the concrete slab for the carport in 2012. Its edge extended northward, across the actual Dooly-Crisp county line, by 6.89 feet. This was the only permanent structure built in the portion of the yard that extended into Dooly County.

Surveys of the property were conducted in 1965, 1988, 2010, and 2012 by various individuals. Each of those surveys showed that the boundary between the

5

properties owned by Jackson and the Dormineys (and later Dowdy and Moore) was the actual boundary line between Dooly and Crisp counties, not the line 60 feet to the north pointed out by Joseph Brown to the Dormineys in 1956. At trial, however, several witnesses who reside in the area testified that the general reputation in the community was that the boundary between Dooly and Crisp counties was in the center of County Line Road.

After deliberation, the jury returned a verdict in favor of Jackson, determining that the boundary between Jackson's land and the land owned by Dorminey and Moore is the actual Dooly-Crisp county line, not the line walked by Joseph Brown in 1956. Following this verdict, Moore and Dorminey moved for a new trial, raising the same issues now enumerated on appeal. After a hearing, that motion was denied. This appeal followed.

1. Moore and Dorminey first argue that the jury's verdict in this case was contrary to law and that it was against the weight of the evidence presented at trial. We disagree.

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with

6

every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of plaintiff's motion for new trial will not be disturbed.

*Cohen v. Lowe Aviation Co., Inc.*, 221 Ga. App. 259, 260 (1) (470 SE2d 813) (1996) (citations and punctuation omitted).

In an action to quiet title in this posture, "a plaintiff must assert that he holds some current record title . . . in order to maintain his suit." *Smith v. Ga. Kaolin Co.*, 269 Ga. 475, 477 (498 SE2d 266) (1998) (emphasis omitted). In this case, Jackson presented evidence through plats, deeds, and testimony that the actual southern boundary of his property (and thus the northern boundary of Ruth Moore's property) is the actual Dooly-Crisp county line. This satisfied his burden to bring forth evidence establishing his claim of title to the property.

Additionally, there were questions of fact in regard to at least one element of Moore's claim of adverse possession with regard to the disputed areas of the property. OCGA § 44-5-161 sets forth the elements of an adverse possession claim. Subsection (a) provides that

7

In order for possession to be the foundation of prescriptive title, it: [m]ust be in the right of the possessor and not of another; [m]ust not have originated in fraud except as provided in Code Section 44-5-162; [m]ust be public, continuous, exclusive, uninterrupted, and peaceable; and [m]ust be accompanied by a claim of right.

Subsection (b) further provides that "[p]ermissive possession cannot be the foundation of a prescription until an adverse claim and actual notice to the other party."

Pretermitting whether Moore and Dorminey presented evidence that establishes each of the elements set forth in subsection (a), the evidence in the case created an issue of fact as to whether the property in question was possessed by Dorminey and her husband (and later by Dowdy and Moore) with the permission of Billy Jackson. William Edmund Jackson's testimony indicated that Billy Jackson permitted Dowdy to cut the grass around the house and to plant pear trees in the area, even though the area where he did so extended onto Jackson's property. From this evidence, a jury was authorized to find that Dowdy's (and later Moore's) possession of these areas came with the permission of Billy Jackson and William Edmund Jackson. *See Drew v. DeKalb Cty.*, 239 Ga. 35, 36 (2) (235 SE2d 528) (1977) (evidence at trial authorized finding that adverse possession claimant had used disputed property as a

8

part of the premises of her residence for 40 years as a lawn and garden with permission of actual owner).

We note, of course, that permissive possession can evolve into adverse possession. However, the person claiming adverse possession must give notice to the owner of the property that his use has become adverse, followed by the requisite time period for obtaining title by prescription. *See Goodson v. Ford*, 290 Ga. 662, 664 (2) (725 SE2d 229) (2012); *Pichulik v. Ball*, 270 Ga. App. 656, 661 (2) (607 SE2d 247) (2004). Although the property in question was used in a similar manner by the Dormineys, Dowdy, and Moore from 1956 until at least 1995, evidence presented at trial suggested that such use came with the permission of William Edmund Jackson and his father, Billy Jackson. The record indicates that the only instances in which William Edmund Jackson may have received notice that Moore claimed the property adversely were when he learned in 1995 that Moore planned to expand her house and in 2010 when he discovered that she was building a carport, both of which would have extended structures on Moore's property over the actual Dooly-Crisp county line.

Whether the Dormineys, Dowdy, and Moore had permission to use the property and whether Moore gave notice to Jackson of her adverse possession of the property

9

are all questions of fact for the jury to resolve. *See Thomas v. Henry Cty. Water and Sewer Auth.*, 317 Ga. App. 258, 264 (3) (731 SE2d 66) (2012) ("whether the facts exist which constitute adverse possession, is for the jury to judge."). Moreover, ultimately, "[t]he jury decides whether the claimant has presented sufficient evidence to establish the elements of adverse possession." *Proctor v. Heirs of Jernigan*, 273 Ga. 29, 29 (2) (538 SE2d 36) (2000).

Here, Jackson presented sufficient evidence to support his claim of title, and there was conflicting testimony presented relating to the adverse possession claim. "Because the jury heard conflicting evidence with regard to . . . those issues, and there was some evidence upon which the jury could rely in forming their verdict, we do not find reversible error[.]" *Cohen*, 221 Ga. App. at 261 (1). This enumeration is therefore without merit.

2. Moore and Dorminey next argue that the trial court erred by granting Jackson's motion in limine to exclude the statements made by Joseph Brown in 1956 in regard to what property he was selling to the Dormineys and what he was keeping at the time of the grant. Although the trial court later reversed its grant of this motion and allowed the evidence of his statements to be presented to the jury, Moore and

10

Dorminey argue that the grant of the motion in limine denied them the opportunity to mention this evidence in their opening statement before the jury.

In pre-trial proceedings, Jackson moved to exclude, among other items of evidence, statements made by Joseph Brown in 1956 in regard to the northern boundary of the property being sold to the Dormineys. In her deposition, Dorminey had indicated that in 1956 when she and A.J. Dorminey bought the land in dispute in this case, Joseph Brown told them that the northern property line ran through the middle of the intersection of County Line Road and Shiloh Road and also through a barn and a pecan tree near that intersection. Jackson claimed that this testimony was inadmissible at trial because it did not satisfy any exception to the hearsay rule. After a hearing, the trial court granted this motion. However, after the first witness in the trial completed his testimony, the trial court reconsidered this ruling and later allowed Dorminey to testify regarding Joseph Brown's 1956 statement for the purpose of showing that Moore entered Jackson's property with good faith.

(a) First, in regard to the trial court's grant of Jackson's motion in limine, even if the trial court's initial ruling precluding evidence of the hearsay statements was erroneous, Moore and Dorminey have failed to show that they were harmed by such

11

ruling, since they were subsequently allowed to present such evidence to the jury. *See Dunn v. State*, 242 Ga. App. 525, 527 (1) (530 SE2d 236) (2000).

(b) In regard to Moore and Dorminey's second argument, that the grant of the motion in limine deprived them of the right to make an effective opening statement to the jury, we find no harmful error on the part of the trial court. Even assuming that the trial court erred in granting the motion in limine, Moore and Dorminey have not shown how they were harmed by this action. To prove harm, they must show that it is highly probable that the alleged error contributed to the verdict. *Hollis v. State*, 269 Ga. App. 159, 163 (4) (603 SE2d 516) (2004).

In *Hollis*, the State moved in limine to exclude certain evidence from a videotape that was potentially exculpatory to the defendant. *Id*. The trial court reserved ruling on the motion pending a review of the unredacted videotape. *Id*. The court had not made a ruling on the motion at the start of trial, and the defense made no mention of the evidence in its opening statement. *Id*. The court later denied the State's motion, and the jury was able to view the entire tape, including the portions that were potentially exculpatory to the defendant. *Id*. The defense had an opportunity to cross-examine a witness about this evidence, and defense counsel discussed it in closing argument. *Id*.

Following his conviction, the defendant in *Hollis* argued to this Court that by delaying its ruling on the motion in limine, the trial court had interfered with the defendant's ability to present an effective opening statement. *Id*. This Court found that argument meritless, noting that the evidence at issue had been presented to the jury in the course of the trial and discussed by the defendant in its closing argument. *Id*. Thus, any error on the part of the trial court was harmless. *Id*.; *accord Dunn*, 242 Ga. App. at 527-28 ("it is highly unlikely the verdict would have been different had the trial court allowed [the defendant] to mention the . . . evidence in her opening statements" where such evidence was admitted before jury and defendant had an opportunity to discuss evidence in closing argument).

Likewise, in this case, although Moore and Dorminey were unable to discuss the hearsay evidence in their opening statements, we find no harmful error. As in *Hollis* and *Dunn*, the evidence that was originally excluded was later presented to the jury, and Moore and Dorminey had an opportunity to discuss the evidence in their closing argument. They have thus failed to show how they were harmed by the initial exclusion of this evidence or their inability to mention it in their opening statements. For these reasons, the claim of error is not sustained.

3. Finally, Moore and Dorminey argue that the trial court should have, on its own motion, realigned the parties in this case because the only issue before the jury was whether Moore and Dorminey could establish adverse possession of the property in question. However, because the trial court never made, and was never asked to make, a ruling on this issue before or during the trial, Moore and Dorminey have not preserved this issue for appeal.

As the Supreme Court discussed in *Cawthon v. Waco Fire & Cas. Ins. Co.*,[2] "a trial court [has] the discretion, at any stage of the action and on such terms as are just . . . to realign the parties." Although the Supreme Court noted in *Cawthon* that this authority is rooted in OCGA § 9-11-21, which provides that "parties may be dropped or added by order of the court on motion of any party or *of its own initiative* at any stage of the action and on such terms are just[,]" nothing suggests that the trial court is compelled, on its own initiative, to realign the parties even when the circumstances of a particular case may warrant realignment. *See Cawthon*, 259 Ga. at 633 (emphasis supplied).

In instances such as this where the trial court does not *sua sponte* rule upon the issue of realignment, it is incumbent upon the party seeking realignment to show that

---

[2] 259 Ga. 632, 633 (386 SE2d 32) (1989) (footnote and punctuation omitted).

it will be harmed if the parties are not realigned and to raise this issue with the trial court before or during the trial so that a ruling can be made. A bald assertion made for the first time in a motion for new trial that the trial court abused its discretion by not realigning the parties on its own motion, does not preserve this error for review. *See HAP Farms, Inc. v. Heard*, 209 Ga. App. 684, 686 (1) (b) (434 SE2d 118) (1993) (appellant failed to preserve error when it did not object to trial court's ruling under OCGA § 9-11-21 and proceeded to trial); *see also McMillian v. Rogers*, 223 Ga. App. 699, 701 (1) (b) (479 SE2d 7) (1996) ("an issue for appeal may not be raised for the first time through a new trial motion . . . [e]numerated errors which raise issues for the first time in a motion for new trial or on appeal present nothing for review." (citations and punctuation omitted)).

In this case, the record does not reflect any request by Moore and Dorminey before or during the pendency of the trial to realign the parties. Thus, although they subsequently argued in their motion for a new trial and on appeal that the trial court's failure to do so on its own motion was error, they have not preserved this issue for appeal.

*Judgment affirmed. McFadden, P. J., and Branch, J., concur.*

15