**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 22, 2026**

# In the Court of Appeals of Georgia

A25A1860. PENDER v. PARIKH et al.

FULLER, Senior Judge.

In this action for medical malpractice, a jury found in favor of defendants Shatul Parikh, M.D., and a surgical practice in which he is a shareholder, Northwest ENT Associates, P.C. Plaintiff Deborah Pender appeals from the final judgment entered in favor of the defendants, contending that the trial court erred when it barred her from cross-examining Dr. Parikh about a federal investigation into Northwest's practices. For the reasons that follow, we conclude that Pender has not shown that the trial court abused its discretion in that regard, and we therefore affirm.

On appeal following a jury trial, we view the evidence in the light most favorable to the jury's verdict. _Moore v. Jackson_, 343 Ga. App. 532, 532 (807 SE2d 495) (2017).

So viewed, the record shows that, in September 2020, Dr. Parikh performed a rigid endoscopic surgical procedure on Pender to address a condition known as Zenker's diverticulum, which is a type of hernia or pouch between one's esophagus and spine where food can collect, making swallowing difficult. Pender previously had undergone neck surgery, which limited her ability to extend her neck backwards. Before her surgery with Dr. Parikh, he told her that the prior procedure "might make [the current surgery] more difficult." He further informed her that risks associated with the procedure include esophageal perforation. Dr. Parikh also told Pender that he might have to abort the procedure if he was unable to access the location at issue. Dr. Parikh ultimately aborted the procedure for that reason.

Two days later, Pender visited an emergency room, complaining of fever-like symptoms and difficulty breathing. Hospital personnel discovered a perforation in her esophagus, for which she was hospitalized for approximately 20 days. In addition, another doctor subsequently diagnosed a scar on one of Pender's vocal cords.

In 2021, Pender sued Dr. Parikh and Northwest for medical malpractice. She alleged that Dr. Parikh's negligent treatment caused her perforated esophagus, as well as hoarseness, a change in the pitch of her voice, and an inability to make herself

2

heard, and that Northwest was vicariously liable for Dr. Parikh's negligence. The case proceeded to trial, during which a physician testified for Pender that Dr. Parikh violated the standard of care in his evaluation and treatment of her, while another physician testified for the defense that Dr. Parikh had complied with the applicable standard of care. The jury ultimately found in favor of the defendants. Pender now appeals from the final judgment entered on the jury's verdict.

In two related arguments, Pender contends that the trial court erred when it: (i) denied her motion in limine seeking to cross-examine Dr. Parikh about a federal investigation into Northwest concerning alleged violations of the False Claims Act, 31 USC § 3729 et seq.; and (ii) denied her mid-trial renewed request to cross-examine Dr. Parikh about that investigation after he purportedly "opened the door" to such evidence by contradicting other witnesses' testimony regarding Pender's surgery and boasting about his meticulous practice and his surgery center's credentials. We discern no abuse of discretion by the trial court.

The record shows that, in a 2018 press release, the United States Department of Justice ("DOJ") announced that Northwest had entered into a civil settlement in which it agreed to pay approximately $1.2 million to resolve allegations that it violated

the False Claims Act by submitting claims to several federal health benefit plans between March 2011 and March 2012 for sinus dilation procedures in which it re-used catheters intended for single use only. The press release stated that, pursuant to a Non-Prosecution Agreement ("NPA"), Northwest had "accepted responsibility for its actions" and entered into a "three-year Integrity Agreement" under which Northwest's claims were to be reviewed for "medical necessity, accurate coding, and safe and appropriate use of medical devices." The settlement agreement referred to in the press release — which was entered into between Northwest and the DOJ (on behalf of several federal entities) "[t]o avoid the delay, uncertainty, inconvenience, and expense" of litigating the claims at issue — was signed by four Northwest physician-partners, including Dr. Parikh. Aside from the signature lines on the agreement, neither the press release nor the agreement mentioned any individual healthcare providers by name.

Before trial, Pender moved in limine to cross-examine Dr. Parikh about the NPA, which, she argued, "constitutes allowable evidence of his prior acts of untruthfulness" pursuant to OCGA § 24-6-608 ("Rule 608"). The defendants, in

turn, moved in limine to exclude all evidence of the NPA. The trial court denied Pender's motion and granted the defendants' motion.

At trial, Pender testified that, when she awoke after surgery, she "felt as bad as [she has] ever felt," and she was experiencing pain from her neck — which was "really swollen" — "down to the upper part of [her] chest." Pender's roommate Jane Stegall, who drove her to and from the surgery, visited her in the recovery room. Stegall testified that, when she arrived, Pender's "neck was swollen out even with her jaws." According to both Pender and Stegall, Dr. Parikh said that "he tried really hard to get the job done" and that he "pushed really hard and kept at it" but decided to stop when "he saw blood." Both witnesses also testified that Dr. Parikh told Stegall "that he hit [Pender's] vocal cords." The doctor who diagnosed Pender's vocal cord scar several months later told her that it was "most likely less than a year old."

Dr. Parikh repeatedly testified at trial that he saw no indications during or immediately after Pender's procedure that he had perforated her esophagus, and he opined that the perforation occurred after she went home following her surgery. According to Dr. Parikh, he instructed Pender to go to the hospital when either Pender or Stegall called him after the surgery to report that Pender swallowed

something and felt a "pop," after which her neck then began to swell. He also testified that it would have been "impossible" for him to have made direct contact with Pender's vocal cords during her surgery, because (i) an endotracheal tube already occupied that space and (ii) multiple persons in the operating room would have alerted each other if that happened. Dr. Parikh further testified that, at times, intubation can cause trauma to patients' vocal cords, even when no problems have been reported with the intubation. He denied both that Pender reported chest pain after the procedure and that he told Pender or Stegall that he hit Pender's vocal cords, that he pushed really hard, or that he stopped when he saw blood.

Dr. Parikh also testified about the "really good outcomes" and "success rates" he has had treating Zenker's diverticulum and about how his "whole career is based on being careful and thoughtful and meticulous and very conscientious and conservative." In addition, he highlighted that his surgery center is certified by

"JCAHO,"[1] which, he testified, is "the highest credentialing of all hospital surgery centers," and that the center is "pretty rigid" as to rules.

Following Dr. Parikh's direct examination, Pender's counsel asked the trial court to revisit its ruling barring cross-examination about the NPA. Counsel argued that Dr. Parikh had "opened the door" to such evidence by testifying about both the "meticulous and thoughtful" level of care he provides and the surgery center's adherence to JCAHO rules and regulations. The court upheld its prior ruling.

Pender argues on appeal that the trial court erred when it barred her from cross-examining Dr. Parikh about the NPA under Rule 608(b), which provides, in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime as provided in Code Section 24-6-609, or conduct indicative of the witness's bias toward a party may not be proved by extrinsic evidence. Such instances may however, in the

---

[1] "JCAHO" stands for "the Joint Commission on Accreditation of Healthcare Organizations," a nonprofit Illinois corporation that, in certain circumstances, plays a role in accreditation for the licensing of healthcare facilities. See *Ga. Hosp. Ass'n v. Ledbetter*, 260 Ga. 477, 477 (396 SE2d 488) (1990). According to Pender, the JCAHO "evaluates and accredits healthcare organizations to ensure compliance with applicable standards of quality and patient safety."

discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness:

> (1) Concerning the witness's character for truthfulness or untruthfulness . . . .

OCGA § 24-6-608(b).

Thus, "[u]nder the express language of the statute, attacking a witness's character for truthfulness may not be done through the use of extrinsic evidence . . . ." *Strong v. State*, 376 Ga. App. 431, 433 (919 SE2d 104) (2025). A trial court may, however, "allow questioning about specific instances of conduct by a witness on cross-examination, if the conduct is probative of the witness's character for truthfulness or untruthfulness." *Cent. Ga. Women's Health Ctr. v. Dean*, 342 Ga. App. 127, 140(2) (800 SE2d 594) (2017). To be admissible under this provision, "the specific instances of conduct must involve acts probative of untruthfulness, including misconduct such as perjury, fraud, swindling, forgery, bribery, and embezzlement." Id. (quotation marks omitted). Because Rule 608(b) "places the decision whether to admit specific instances of conduct within the trial court's discretion, we will reverse the trial court's ruling only on a clear abuse of that discretion." *Gaskin v. State*, 334 Ga. App. 758, 762(1)(a) (780 SE2d 426) (2015).

"Trial court judges are given wide latitude to impose restrictions on cross-examination based on concerns about prejudice, confusion of the issues, or interrogation that is only marginally relevant." *Strong*, 376 Ga. App. at 433. In that vein, even relevant evidence may be excluded under OCGA § 24-4-403 ("Rule 403") "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

> The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. Thus, the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly. In that regard, an appellate court reviewing issues under Rule 403 must look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.

*Wright v. State*, 362 Ga. App. 867, 878(2) (870 SE2d 484) (2022) (citation modified).

"The probative value of evidence is a combination of its logical force to prove a point and the need at trial for evidence on that point." *Harris v. State*, 314 Ga. 238, 263(3)(a) (875 SE2d 659) (2022) (quotation marks omitted).

> Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value. And the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered.

Id. (quotation marks omitted).

As with Rule 608(b), "application of the Rule 403 test is a matter committed principally to the discretion of the trial courts." *Harris*, 314 Ga. at 264(3)(a) (quotation marks omitted). That is because the Rule 403 balancing test is a

> quintessentially fact-sensitive enterprise, and the trial judge is in the best position to make such factbound assessments. . . . Only rarely — and in extraordinarily compelling circumstances — will we, from the vista of a cold appellate record, reverse a [trial] court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect.

*Rivers v. K-Mart Corp.*, 329 Ga. App. 495, 497(1) (765 SE2d 671) (2014) (quotation marks omitted). Thus, under the abuse-of-discretion standard,

> the trial court's conclusions will be affirmed so long as they are in conformity with the governing legal principles, based on correct facts that are relevant to determining whether any legal requirements are satisfied, and within the range of possible outcomes in which there could be room for reasonable and experienced minds to differ.

10

*Premier Pediatric Providers v. Kennesaw Pediatrics*, 318 Ga. 350, 355(2) (898 SE2d 481) (2024) (citation modified).

Here, pretermitting whether the trial court properly ruled on the motions in limine,[2] we discern no abuse of discretion in the court's subsequent mid-trial ruling barring Pender from cross-examining Dr. Parikh about the NPA. Regardless of whether Dr. Parikh may have "opened the door" to such impeachment by contradicting Pender's and Stegall's testimony or by testifying about his good outcomes, the meticulousness of his practice, or his surgery center's credentials, the NPA sheds little-to-no light on Dr. Parikh's credibility or dishonesty, as it neither contains any admission of wrongdoing by Northwest[3] nor — more importantly —

---

[2] See, e.g., *The Kroger Co. v. Walters*, 319 Ga. App. 52, 57(2) (735 SE2d 99) (2012) ("A motion in limine is properly granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial." (quotation marks omitted)).

[3] We reject Pender's argument that an admission of wrongdoing by Northwest may be inferred from either a statement in the DOJ press release that Northwest "accepted responsibility for its actions" or a provision in the related settlement agreement identifying approximately $400,000 of the total $1.2 million settlement as "restitution." Neither statement contains sufficient context to show that Northwest admitted any wrongdoing, much less the extent of any such purported wrongdoing. For the same reason, Pender's claim that Northwest's failure to deny wrongdoing in the settlement agreement shows such wrongdoing simply assumes what it seeks to establish and ignores her burden — as the proponent of the evidence at issue — to

involves any allegations of conduct probative of truthfulness engaged in by him specifically.[4] See OCGA § 24-4-401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); *Williams v. State*, 332 Ga. App. 546, 549(1)(b) (774 SE2d 126) (2015) (concluding that "a generalized statement" that "police can and will lie" was not a proper subject for cross-examination of a police officer under Rule 608(b), because it was "not probative of [that particular officer]'s own credibility in testifying under oath" (quotation marks omitted)). See also *Allen v. State*, 345 Ga. App. 599, 610(6) (814 SE2d 740) (2018) (finding no error in a ruling barring certain cross-examination under Rule 608(b) where the prior conduct at issue was not "relevant, whether directly or inferentially, to the [witness]'s character for truthfulness"). See also generally *Campbell v. State*,

---

establish its admissibility. See, e.g., *Wilson v. State*, 312 Ga. 174, 185(1)(c) (860 SE2d 485) (2021). And even if the NPA arguably could be read to imply an admission of wrongdoing by Northwest, it does not necessarily follow that Dr. Parikh's testimony about the surgery center's compliance with credentialing requirements "opened the door" to any such evidence, as Northwest and the surgery center are separate entities.

[4] Because Pender's claim against Northwest is premised entirely on Dr. Parikh's alleged negligence — and not on any acts engaged in by Northwest itself — the issue of credibility in this case necessarily pertains only to Dr. Parikh.

362 Ga. App. 337, 340–41(2) (868 SE2d 471) (2022) (finding no abuse of discretion in excluding as irrelevant impeachment testimony under Rule 608(b), where the connection between the testimony about "collateral" matters and the issues at trial was "extremely attenuated"). Compare *Dean*, 342 Ga. App. at 139–42(2) (holding that the trial court did not abuse its discretion when it permitted cross-examination of a medical malpractice defendant about an inaccurate physician progress note concerning his interactions with one of the plaintiffs, because the note was probative of the doctor's character for truthfulness).

Moreover, the danger of unfair prejudice to Dr. Parikh resulting from cross-examination about this largely collateral issue would have been high, as it would have invited the jury to speculate that, because his practice may have engaged in misconduct before, he is more likely to have done so here. See *Wright*, 362 Ga. App. at 884(2)(b)(ii) (explaining that the "misuse [of] evidence for improper propensity purposes" is "the very essence of unfair prejudice"). Under these circumstances, the trial court was entitled to conclude that evidence concerning the NPA would have had "scant . . . probative force," while its prejudicial effect would have been significant. Id. at 878(2) (quotation marks omitted). See also generally *Williams v. State*, 328 Ga.

13

App. 876, 880(1) (763 SE2d 261) (2014) (a proper application of abuse-of-discretion review recognizes that there is a "range of possible conclusions the trial judge may reach" and that we often will affirm a ruling under this standard "even though we would have gone the other way had it been our call" (quotation marks omitted)); *McDonald v. Garden Svcs.*, 163 Ga. App. 851, 853 (295 SE2d 551) (1982) (absent an abuse of discretion, we will not substitute our judgment for the trial court's, even if individual members of this Court may have reached a different conclusion).

Pender also argues that Dr. Parikh is to blame for the absence of evidence of his participation in the wrongdoing alleged in the NPA, because he refused to answer any questions on that topic when she deposed him. In a related claim, she maintains that "[t]he jury was entitled to hear about Dr. Parikh's refusal to . . . answer those questions, and to draw an adverse inference therefrom." Because Pender was the proponent of the evidence of the settlement agreement, she bore the burden of establishing its admissibility — i.e., that it was relevant and that its probative value was not substantially outweighed by the danger of unfair prejudice. See, e.g., *Wilson v. State*, 312 Ga. 174, 185(1)(c) (860 SE2d 485) (2021). But the record contains no indication that Pender asked the trial court to compel answers to her deposition

14

questions, absent which she can only speculate about how Dr. Parikh would have testified, which is insufficient to meet her burden on appeal. And Pender's claim that the jury was entitled to draw an adverse inference from Dr. Parikh's refusal to answer questions about his participation in the alleged wrongdoing assumes what it seeks to establish: that the trial court should have allowed her to ask questions about that topic in the first place.

For the above reasons, Pender has not met her burden of showing that the trial court abused its broad discretion when it barred her at trial from cross-examining Dr. Parikh about the NPA, regardless of whether the court properly adjudicated the parties' prior competing motions in limine. We therefore affirm the judgment of the trial court.

We do not authorize the reporting of this opinion because it does not announce a new rule or policy or involve an interpretation of law that is not already precedent. See Ga. Ct. App. R. 33.2(b), 34.

*Judgment affirmed. Dillard, P. J., and Mercier, J., concur.*