**SECOND DIVISION
RICKMAN, P. J.,
GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**November 3, 2025**

# In the Court of Appeals of Georgia

A25A1240. JACOB YOUNG, III. v. THE STATE.

Rickman, Presiding Judge.

Following a jury trial, Jacob Young, III was convicted on one count of child molestation for acts inflicted on the victim, his minor daughter.[1] He argues on appeal that the trial court erred by admitting evidence of two prior acts of child molestation pursuant to OCGA § 24-4-414 ("Rule 414") that were not relevant to the current charges and/or were overly prejudicial pursuant to OCGA § 24-4-403 ("Rule 403"), and further erred by limiting the testimony of certain character witnesses under OCGA § 24-4-404 ("Rule 404") and OCGA § 24-4-405 ("Rule 405"). We find no error in the trial court's admission of evidence of one of the prior acts of child

---

[1] Young was also indicted on one count of rape and one count of incest, but he was acquitted of those charges.

molestation and its limitation of the character witness testimony. But, as explained below, even though we find the evidence was legally sufficient to sustain Young's conviction, the trial court should have excluded evidence related to the second prior act of child molestation. And because we cannot conclude that the admission of that evidence was harmless, we reverse Young's conviction.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LEd2d 560) (1979).

(Citation and punctuation omitted.) *Laster v. State*, 340 Ga. App. 96, 97 (796 SE2d 484) (2017).

So construed, the evidence adduced at trial showed that in 2019, the victim's cousin, then 12 years old, reported to his mother that a year or two earlier, Young (his uncle and the victim's father) had rubbed his penis on the outside of his pajama bottoms in a circular motion. The cousin stated that it had happened one evening when Young, himself, and several other children had been in bed watching cartoons

and, after the other children left the room, Young asked him to remain and touched him. The cousin was taken for a recorded forensic interview and, as a result of his outcry, the victim, who was then nearly 13 years old, was also subjected to a forensic interview but denied that Young had ever touched her inappropriately. The victim's brother, Young's then 16-year-old son, also underwent a forensic interview and stated that when he was approximately five or six years old, he was laying in bed between his mother and Young and as his mother was reading her Kindle, Young rolled over and placed his hand on his son's penis. Young's hand remained cupping his son's penis on the outside of his pajama bottoms for about a minute, and his son felt "uncomfortable." It was not clear to his son whether Young was awake or asleep, and the forensic interviewer concluded that there was "no information . . . provided to suggest that [the son was] touched in a sexually inappropriate manner."

Approximately a year after her cousin's outcry, the victim became withdrawn and was entertaining thoughts of suicide and engaging in self-harm. She disclosed to her best friend that Young had, in fact, touched her inappropriately over the years. She then reported the same to her cousin, who encouraged her to tell her mother and her aunt. The victim did so and as a result, she was referred for a second forensic

interview. Based upon the victim's disclosures during the second recorded interview, Young was arrested and charged.

During the ensuing trial,[2] the victim testified that when she was between three and five years old, Young entered her bedroom in the night and rubbed his hands on her thighs, chest, and "private area." He entered her room again in the night when she was around five or six years old and touched her in much the same way. Young instructed the victim not to tell anyone what he had done as he was leaving her bedroom. The next incident occurred when the victim was around seven years old and was preparing to go to sleep on the couch in the apartment in which her family then lived. Young got on top of the victim and touched both the inside and the outside of her "private area" with his own "private area." The victim testified that she felt pain as he did so and that at some point, Young placed his hand over her mouth. The last incident occurred when the victim was 12 or 13 years old and her family was living in a trailer. Young again entered her bedroom as she slept, removed her pajama bottoms,

---

[2] This was the second trial of this case. The first ended in mistrial after the jury became hopelessly deadlocked and could not reach a verdict.

and began touching the inside of her "private area" with his "private area."[3] The victim attempted to push Young off of her, but he held a lighter to her arm and told her that if she did not stop moving, he would burn her.

In addition to the victim's testimony, the jury watched both of her forensic interviews and heard testimony from the forensic interviewer, who explained that it is not uncommon for victims of sexual abuse to initially deny abuse before later disclosing it. The State also presented testimony from the victim's mother and the victim's best friend to whom she made the initial outcry, as well as a sexual assault nurse who did not examine the victim, but testified that since the victim's outcry came more than 72 hours after the abuse, COVID protocols in place at the time did not dictate that she receive a sexual assault exam because there would likely be no physical evidence of abuse.

Finally, the State admitted, over Young's objection, evidence of prior acts of child molestation pursuant to Rule 414. That evidence consisted of testimony from

---

[3] The victim testified that she believed Young actually inserted his penis into her vagina during the episodes that he touched her "private area" with his "private area." The jury acquitted Young of rape and incest, both of which were predicated upon Young having sexual intercourse with the victim. The facts set forth herein are construed in light of the jury's verdict.

and the forensic interviews of both the victim's brother and her cousin, as well as evidence of another incident that occurred in South Carolina about 15 years before the earliest crimes alleged in this case (the "South Carolina offense"). The South Carolina offense involved a woman who was 39 years old at the time of trial, but who knew Young from when they were in middle and high school. She testified that in the spring of 1999, when she was 15 years old and Young was 19 or 20 years old, they left a racing event together with two other friends and went to a trailer in the woods. While there, she and Young went into a bedroom and either she or Young removed her clothing. The witness testified that she "pushed out"[4] her memories of the event and could not remember many details, but testified that Young performed oral sex on her and they had sexual intercourse. Although she recalled being "scared," "confused" and "super uncomfortable," she stated that Young was "very sweet" and "very nice"and did not use force.

The jury convicted Young on one count of child molestation. He filed a motion for new trial, which the trial court denied. This appeal followed.

---

[4] The witness testified that she "blacked out or something" and could not remember much of what happened, but clarified that she had not actually lost consciousness, but was "scared" and "slightly confused with the situation that was going on."

1. Young asserts that the trial court abused its discretion by admitting (a) evidence of his son's statement that he placed his hand on his son's penis while he may or may not have been asleep, and (b) evidence of the South Carolina offense. The State gave notice prior to trial of its intent to introduce the evidence in accordance with Rule 414 (b), and Young filed a motion in limine to exclude it. After conducting a hearing, the trial court ruled that evidence of both prior offenses were relevant and admissible under Rule 414 and Rule 403.

Rule 414 (a) provides that, "[i]n a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." The relevance standard under Georgia law is a liberal one, and is satisfied if the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401; see *State v. Jones*, 297 Ga. 156, 159 (2), n.2 (773 SE2d 170) (2015). Thus, although propensity evidence is generally prohibited, see Rule 404 (b),[5] it is permitted in cases

_____

[5] Rule 404 (b) provides, in pertinent part, "Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show

7

of child molestation because "[e]vidence that a defendant has engaged in a prior offense of child molestation is relevant to show, among other things, that the defendant has a disposition of character that makes it more likely that he did commit the act of child molestation charged in the instant case." (Citation and punctuation omitted.) *Wilson v. State*, 312 Ga. 174, 188 (1) (d) (860 SE2d 485) (2021); see *Robinson v. State*, 342 Ga. App. 624, 634 (4) (a) (805 SE2d 103) (2017) (noting that Rule 414 "create[s] a rule of inclusion, with a strong presumption in favor admissibility, and the State can seek to admit evidence under [this] provision[ ] for any relevant purpose, including propensity") (citation and punctuation omitted).

Nevertheless, even if evidence is considered relevant and admissible under the liberal rules of Rule 414, the trial court must still make a determination that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. See Rule 403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . .."); see *Jackson v. State*, 306 Ga. 69, 77 (2) (b) (ii) (829 SE2d

---

action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

142) (2019) ("The major function of [Rule 403] is to exclude matter of scant or cumulative probative force, dragged in by its heels for the sake of its prejudicial effect[.]") (citation and punctuation omitted). "[T]he application of Rule 403 to exclude evidence offered under Rule 414 eliminates due process concerns posed by evidence of a defendant's other offenses of child molestation that might be so prejudicial that the admission of that evidence would violate the defendant's fundamental right to a fair trial." *Wilson*, 312 Ga. at 189-190 (2).

When analyzing the probative value of prior child molestation offenses under the Rule 403 balancing test, the courts "must make a common sense assessment of all the circumstances that may logically bear on the probative or prejudicial value of the evidence, including the need for the evidence, the overall similarity between the prior offenses of molestation and the charged conduct, and the temporal remoteness of the prior offenses." Id. at 190-191 (2); see *Strong v. State*, 309 Ga. 295, 310 (2) (d) (1) (845 SE2d 653) (2020). Because Rule 403 is an extraordinary remedy, "we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Morgan v. State*, 307 Ga. 889, 897-898 (3) (d) (838 SE2d 878) (2020). We will address each of Young's arguments in turn.

(a) Young concedes that his son's statement that Young placed his hand on his son's penis while the child was in bed with his mom and Young was relevant under Rule 414, but nevertheless contends that the evidence should have been excluded as unfairly prejudicial under Rule 403. He relies primarily on the fact that the son did not know whether the act was intentional, the forensic interviewer's report that there was no evidence of inappropriate sexual contact, and the incident's remoteness in time.

In a trial lacking physical evidence in which the State bore the burden of proving that Young had inappropriate sexual contact with his daughter whose outcry was delayed, the State's need for evidence that Young's son recalled Young touching his penis and making him feel distinctly "uncomfortable" was significant. The incident was similar to those reported by the victim (and her cousin) in that all involved Young getting into bed with the children and, without preamble, touching their genitals. And similar to the victim, Young's son reported that the contact occurred when he was 5 or 6 years old. Thus, although the episode may have been temporally remote by the time Young was arrested and charged, it was within a few years of the time that the victim reported being first abused.

Faced with these circumstances, the trial court did not abuse its discretion by admitting evidence involving Young's son under the Rule 403 balancing test. See *Ramirez-Ortiz v. State*, 361 Ga. App. 577, 583-586 (4) (a) (865 SE2d 206) (2021). To the extent the son expressed uncertainty as to whether Young was sleeping and/or that the forensic interviewer reported there was no evidence to suggest that the son was touched inappropriately, both witnesses testified at trial and Young had the opportunity to — and, in fact, did — explore those areas on cross-examination. Accordingly, there was no error in the admission of this evidence.

(b) We cannot say the same for the trial court's admission of evidence related to the South Carolina offense. During the pretrial hearing on Young's motion in limine to exclude the evidence, the State made a proffer that it anticipated the South Carolina witness would testify she "was forcibly raped against her will." Based upon that proffer, the trial court held that the evidence was relevant and admissible pursuant to Rule 414 and Rule 403. And, had the evidence presented been one of forcible rape, we would agree that it would have been admissible in the current trial.

As set forth above, however, the witness did not testify to a forcible rape. To be sure, she did describe acts that would amount to a sexual offense under Georgia law

because she was under the age of consent. See OCGA §§ 16-6-3 (a) (statutory rape); 16-6-4 (a) (1) (child molestation). But even if we assume that evidence of the South Carolina offense was relevant to the current charges and admissible pursuant to Rule 414, we nevertheless conclude that it should have been excluded under Rule 403.

The probative value of the evidence was scant, rendering the State's need for the evidence minimal. See *Armstrong v. State*, 310 Ga. 598, 603 (2) (b) (852 SE2d 824) (2020) ("The probative value of evidence is a combination of its logical force to prove a point and the need at trial for evidence on that point."). That a 19- or 20-year-old Young snuck into the woods with a 15-year-old girl to engage in sexual activity does little to shed light on the question of whether he, as a fully adult male, would enter into the bedroom of his young child and forcibly molest that child.

Moreover, there were very few similarities between the crimes, and yet their differences are great. At the time of the South Carolina offense, the witness was 15 years old and Young was four or five years older. The witness joined Young of her own volition and, although she could not legally consent to the sexual acts and appeared at trial to harbor deep regrets about the incident, she described a "sweet" and "nice" Young, and denied that he used force. In contrast, the victim in the

charged offense described Young as a 30-something-year-old man sneaking into the bed of his prepubescent child and forcibly molesting her.

There is also a 15-year gap between the South Carolina offense and the earliest crimes alleged in this case, further diminishing its probative value given the lack of similarities between the crimes. See *State v. Dowdell*, 335 Ga. App. 773, 779 (2) (c) (783 SE2d 138) (2016) (physical precedent only) (affirming, in defendant's trial for forcible rape, the trial court's exclusion of prior acts evidence when defendant was a teenager upon concluding that the evidence was not probative to the issues at trial, "given the lack of similarity between those acts and the charged offense, the decade separating the other acts from the charged offense, and the defendant's immaturity at the time the other acts were committed"); see generally *Harris v. State*, 314 Ga. 238, 274-277 (3) (e) (ii) (B) (1) (875 SE2d 659) (2022); *Morgan v. State*, 307 Ga. 889, 897-898 (3) (d) (838 SE2d 878) (2020).

The minimally probative value of evidence of the South Carolina offense was substantially outweighed by the danger of its unfair prejudice. We recognize that evidence of a prior offense of child molestation, while naturally prejudicial, is not generally unfairly prejudicial; "rather it is prejudicial for the same reason it is

13

probative: it tends to prove the defendant's propensity to molest children." *Wilson,* 312 Ga. at 190 (2). But, as set forth above, evidence of the South Carolina offense did little to prove Young's propensity to molest young children. And with the lack of physical evidence and the victim's delayed outcry, the State's evidence at trial consisted of the victim's testimony, the testimony of the people to whom she recounted her allegations of sexual abuse, and the Rule 414 witnesses. During closing argument, the State leaned on the Rule 414 witnesses, arguing that the witnesses proved "he's a predator. . . [h]e's a pedophile, he's a child molester, and he's a rapist."

In such a case, we must assume that the propensity evidence carried substantial weight and that the erroneous admission of the South Carolina offense was unfairly prejudicial. Cf. *Collum v. State*, 376 Ga. App. 376, 386-388 (1) (f) (918 SE2d 171) (2025) (holding evidence of appellant's extensive collection of "teen theme" pornography was unfairly prejudicial and should have been excluded under Rule 403 in child molestation trial); see generally *Harris*, 314 Ga. at 274-277 (3) (e) (ii) (B) (1).

That does not end our inquiry, however. We must still assess whether the erroneous admission of evidence of the South Carolina offense can be deemed

harmless, "meaning that it is highly probable that the error did not contribute to the verdict." (Citation and punctuation omitted.) *Strong,* 309 Ga. at 316 (4); see also *Brookins v. State*, 315 Ga. 86, 100 (5), n.7 (879 SE2d 466) (2022). "In determining whether trial court error was harmless, we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict." (Citation and punctuation omitted.) *Strong*, 309 Ga. at 316 (4).

For the same reasons that we determined that evidence to be overly prejudicial, we cannot say it is highly probable that the evidence did not contribute to the jury's verdict. See *Collum*, 376 Ga. App. at 389-391 (1) (h); *King v. State*, 346 Ga. App. 362, 369-370 (1) (816 SE2d 390) (2018); *Gaskin v. State*, 334 Ga. App. 758, 764-765 (1) (b) (780 SE2d 426) (2015). Thus, although the evidence was certainly sufficient to support Young's conviction,[6] the admission of the South Carolina offense was not

---

[6] Young has not specifically challenged the sufficiency of the evidence underlying his conviction. Nevertheless, we hold that the evidence was sufficient to sustain his conviction on one count of child molestation. See OCGA § 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person . . . [d]oes an immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]"); *Bowman v. State*, , 332 Ga. App. 766, 769 (1) (774 SE2d 805) (2015) ("It is axiomatic that the testimony of a single witness is sufficient to prove the elements

harmless. Accordingly, we must reverse the trial court's denial of Young's motion for new trial based on the erroneously admitted prior act evidence. See *King*, 346 Ga. App. at 369-370 (1); *Gaskin*, 334 Ga. App. at 765 (1) (b).

2. Because the evidence against Young was legally sufficient to sustain his conviction, he may be subject to retrial by the State. See generally *Olsen v. State*, 371 Ga. App. 12, 13 (899 SE2d 518) (2024). We will therefore address Young's remaining enumeration of error.

Young contends that the trial court erroneously limited his presentation of character evidence. We disagree.

In his defense, Young presented the testimony of three character witnesses. The witnesses, two of whom worked in law enforcement, generally testified as to how long they had known Young; that Young was a hard worker and a good man; that Young had spent time around their children and/or grandchildren; and that Young had a reputation for truthfulness. When Young's counsel began questioning the witnesses about the specific interactions between the witnesses' children and/or

---

of the crime charged."); see also OCGA § 24-6-620.

16

grandchildren and Young, the State objected and the trial court sustained the objections.

At the motion for new trial hearing, Young elicited testimony from each of his character witnesses that he contends the trial court erroneously excluded. The witnesses denied having observed Young exhibit inappropriate conduct toward his own children, toward their children or grandchildren, or toward their wives or other women, and the witnesses stated that they would not allow their children and/or grandchildren to be around him if they believed him to be a child molester. Additionally, one of the witnesses testified that he had known Young his entire life and that Young had never engaged in inappropriate sexual contact with him when he was a child.

Young asserts that he should have been permitted to admit this testimony in order to rebut the State's evidence and to prove that he had "a reputation for not having a lustful disposition toward other children." Specifically, he argues that since the State admitted propensity evidence pursuant to Rule 414 that went to his character

for lustfulness toward children, he should have been permitted to admit testimony to rebut that evidence under Rules 404 and 405.[7]

Young's argument fails for at least two reasons. First, the State's prior act evidence was admitted pursuant to Rule 414 — a rule specifically governing prior acts of child molestation in cases involving charges of child molestation — and there is no provision in Rule 414 that allows for an accused to admit evidence of specific instances of good character to rebut evidence admitted pursuant to that rule. See *King*, 346 Ga. App. at 364 (1) (recognizing that Rule 414 is the more specific statute that supercedes the provisions of Rule 404 in child molestation cases).

Second, we do not believe that evidence that Young may not have molested other witnesses' children or grandchildren is necessarily relevant to the question of

---

[7] Rule 404 (a) (1) provides that "[e]vidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion, except for . . . [e]vidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same." Rule 405 then provides the method through which evidence admissible under Rule 404 may be admitted. See Rule 405 (a) ("In all proceedings in which evidence of character or a trait of character of a person is admissible, proof shall be made by testimony as to reputation or by testimony in the form of an opinion."); Id. at (b) ("In proceedings in which character or a trait of character of a person is an essential element of a charge, claim, or defense or when an accused testifies to his or her own character, proof may also be made of specific instances of that person's conduct."

18

whether he molested the victim in this case. See generally *Fiek v. State*, 266 Ga. App. 523, 525 (2) (597 SE2d 585) (2004) (decided before the adoption Rule 404 and 405, but affirming the trial court's exclusion of videotape evidence of children who denied being molested by appellant); *Ware v. State*, 191 Ga. App. 896, 897 (3) (383 SE2d 368) (1989) (holding trial court properly prohibited appellant's character witness from testifying "concerning his reputation for [not] molesting children").

*Judgment reversed. Davis, J., concurs, and Gobeil, J., concurs fully in Divisions 1 (a) and 2, and concurs in judgment only in Division 1 (b).*